In the Matter of the Application of NIAGARA, LOCKPORT AND ONTARIO POWER COMPANY, Petitioner, Relative to the Acquiring Title to Certain Real Property Located in the Town of Orwell, Oswego County, New York, of which PERCY W. HORTON and Others, Respondents, Are Owners and Persons Interested Therein.

Supreme Court, Oswego County, May 23, 1925.

Condemnation — acquisition by power company of river and riparian rights of intermediate owners — failure of petitioner to file map of property to be taken, pursuant to act of incorporation, Laws of 1894, chap. 722, bars taking under said act and under Transportation Corporations Law, section 83 of which makes filing of map condition precedent — petitioner entitled to judgment under Conservation Law, § 624, subd. 3 — said statute is constitutional — determination of Public Service Commission that acquisition of property is necessary is conclusive — use to which property is proposed to be taken is public one — sale of power without State does not make use private.

Petitioner, a public service corporation, generating, producing and distributing electricity to the public for heat, light and power, is not entitled to acquire the property of intermediate owners upon the Salmon river, including their river and riparian rights, for the development of additional water power for electrical purposes, pursuant to its special act of incorporation (Laws of 1894, chap. 722), giving petitioner the right to take by condemnation such lands, waters or rights as are necessary for its purposes, where petitioner has failed to file in the office of the clerk of Niagara county a survey and map of the land intended to be taken, the filing of which is a condition precedent to the institution of said proceedings under the provisions of the act of incorporation.

Nor is the petitioner entitled to maintain said proceedings pursuant to the right of condemnation granted electrical corporations under the Transportation Corporations Law, section 83 of which requires the filing of a map of the lands to be taken, since the failure to file such map is a jurisdictional defect, fatal to the institution of said proceedings.

However, petitioner, having title to a major portion of the head and volume of the usable flow for power at the site in said stream which it proposes to develop and utilize as a single undeveloped water power site, may maintain said proceedings and is entitled to a judgment of condemnation therein within the provisions of the Conservation Law, section 624, subdivision 3, where the Public Service Commission, pursuant to said statute, on application of the petitioner and after a hearing to the defendants herein, granted an order and determination that said acquisition was necessary to the full development of the power site as proposed; said statute is constitutional under the sovereign power of the State to take private property for public use for it neither denies to the defendants the equal protection of the laws nor permits the taking of their property without due process of law.

The determination of the Public Service Commission that the acquisition of defendants' property is necessary for the utilization of a single undeveloped water power site for the production of light, heat and power within the territory served by the petitioner is conclusive.

The fact that the petitioner sells power without the State does not invalidate said proceedings on the ground that such distribution is a private rather than a public use.

APPLICATION for judgment of condemnation and appointment of commissioners.

*Purcell, Cullen & Pitcher* [*Henry W. Killeen* of counsel], for the petitioner.

*Morehouse & Morehouse* [*Clayton I. Miller* of counsel], for the respondents Percy W. Horton and others.

CHENEY, J.:

Plaintiff is a corporation created by special act (Laws of 1894, chap. 722) for the purpose of generating, producing, distributing, supplying and selling electricity to the public for light, heat and power, and for lighting streets, public places and public and private buildings in the several cities, villages and towns mentioned in the statute under which it was incorporated and the amended certificates of incorporation duly filed, and in the certificate of incorporation of the various corporations which have been from time to time merged with it. As such it is a public service corporation and is subject to and under the jurisdiction of the Public Service Commission of the State of New York. It is engaged in the business for which it was incorporated, and procures the electrical energy which it distributes both by purchase and by generation in its own plants. The greater part of this electricity is purchased at Niagara Falls, both on the American side and the Canadian side, and it has a steam plant at Lyons, N. Y., and a hydraulic plant on the Oswego river at Minetto and another on the Salmon river at Orwell, Oswego county, at which it generates electricity. It has transmission lines connecting all of these sources of power and extending into and supplying the principal municipalities in practically the whole of the State west of Syracuse. It supplies a large quantity of electrical energy for the various uses mentioned in the purposes of its incorporation, and the demand therefor is rapidly increasing.

To supply the increased demand it is contemplating the development of additional water power upon the Salmon river immediately down stream from its present plant there. It already owns a portion of the property necessary for use in this development, in two parcels, but intermediate between them is the property of the defendants, including the river and the riparian rights therein, and it has commenced this proceeding for the purpose of acquiring the defendants' property by condemnation, so that the whole flow and fall of the river upon all three parcels can be developed as one water power, and obtain the additional power that can be

produced by the total head of water on the whole property, the proposition being to build a dam on its own property down stream from defendants' property, of sufficient height to raise the water to the tail race of its present plant.

The defendants have answered denying certain of the allegations in the petition and setting up certain affirmative defenses, the chief of which is that the statute under which plaintiff is in part proceeding is unconstitutional in that it tends to deprive defendants of their property without due process of law and denies to them the equal protection of the laws. The proof of the various parties has been had at a trial of the issues before the court. Satisfactory proof has been offered by the plaintiff in substantiation of the allegations in the petition which have been controverted by the answer, and no proof to the contrary has been offered by defendants. The only question to be determined, therefore, is whether under the law the plaintiff is entitled to the judgment of condemnation.

Plaintiff's claim to the right to acquire this property by condemnation is threefold: *First*, under the special act under which it is incorporated it is given the right to take by condemnation such lands, waters, easements or rights thereon necessary for its purposes; *second*, that by reason of its merger with various corporations formed under the Transportation Corporations Law, notably the Salmon River Power Company, it has all the powers of condemnation possessed by those corporations under the Transportation Corporations Law, and *third*, that it is entitled to acquire this property by virtue of section 624, subdivision 3, of the Conservation Law, added by Laws of 1921, chapter 579, and as amended by chapter 242 of the Laws of 1922.

Chapter 722 of the Laws of 1894, by virtue of which the plaintiff was originally incorporated, provides (in § 10): " Said company may, for the purposes for which it is incorporated, or any of them * * * under the right of eminent domain hereafter granted to it by this act and in pursuance thereof intercept and divert the flow of water from lands of riparian owners, and from persons owning or interested in waters which are or may be necessary for the purposes of said company; " and in section 12: " Said company may take lands, waters or easements therein, by gift, devise or purchase and shall have all the rights, powers, privileges and duties in relation to the taking, acquiring and holding lands waters, easements and rights (except lands or waters of the Erie Canal), necessary for its purposes, by condemnation proceedings or otherwise, pursuant to the condemnation law."

It is unnecessary to decide whether those provisions are broad

enough to authorize the acquiring by condemnation of such property as may be necessary for carrying on the business of the plaintiff in the execution of the extended powers and territory of operation claimed by it by virtue of the various certificates filed by it pursuant to the General Corporation Law and the Stock Corporation Law, for the reason that it appears that it has not complied with the conditions precedent to the exercise of the right of eminent domain contained in its original act of incorporation. Section 14 of said act provides: " Before beginning condemnation proceedings to acquire any lands, waters, easements or rights therein, or entering upon or using thereof, except to survey the same, and except such as shall have been acquired by gift, devise or purchase, said company shall cause a survey and map to be made of the lands, water, easements and rights therein, intended to be taken and acquired by condemnation proceedings, by or on which the land, water, easement or right therein of each owner or occupant shall be designated, which map shall be signed by the president and secretary of said company, and be filed in the Niagara county clerk's office."

Section 12 of said act, heretofore quoted, further provides that proceedings for the exercise of the right shall be conducted under the Condemnation Law " as nearly as may be, except that the petition for such condemnation shall show that the provisions of this act have been complied with by said company." The filing of the map and an allegation thereof in the petition are clearly made conditions precedent to the institution of condemnation proceedings under that act. It is not claimed that such map was ever filed in the Niagara county clerk's office or any other clerk's office before the institution of this proceeding, nor is the compliance with this provision alleged in the petition. Clearly plaintiff cannot base its right to a judgment herein upon the act of 1894.

The second claim of right to condemn is based upon the fact that the plaintiff, pursuant to section 85 of the Stock Corporation Law (as amd. by Laws of 1924, chap. 441), merged the Salmon River Power Company, a corporation organized as an electric light company under the Transportation Corporations Law, and thereby " all of the estate, property, rights, privileges and franchises " of the latter corporation, including its rights to acquire property by condemnation, became vested in it. By section 61 of the Transportation Corporations Law, subdivision 2, any electric light company having a contract with any town or incorporated village for the lighting of streets, parks, squares or public buildings in any town or village is " vested with the power and authority to acquire such real estate as may be necessary for the purposes of

its incorporation, or acquire the right of way through any property in the same manner as is now vested by law in waterworks companies." Plaintiff has proved that it has entered into and is performing under several contracts with towns and incorporated villages in Oswego and Onondaga counties for the public lighting specified in the section.

Section 83 of the Transportation Corporations Law, relating to waterworks corporations, provides: " Before entering upon, taking or using any land, for the purposes of its incorporation such corporation shall cause a survey and map to be made of the lands intended to be taken or entered upon, by and on which the land of each owner or occupant shall be designated, which map shall be signed by the president and secretary, and filed in the office of the county clerk of the county in which such lands are situated."

Defendant claims that by reason of the reference to the waterworks provisions in that portion of the statute giving to electric light corporations the right of condemnation, the filing of a map in compliance with section 83 of said statute is a condition precedent to the institution of a proceeding to condemn by an electric light corporation. It has been squarely held in proceedings instituted by waterworks companies that the failure to file such map was a jurisdictional defect, and that unless it appears that such map had been filed the proceeding should be dismissed. (*Matter of Citizens Water Works Co.*, 32 App. Div. 54; *Old Homestead Water Co.* v. *Treyz*, 202 id. 98.) It is not claimed that such a map was filed in this case before the institution of this proceeding, although it appears by the proof that such a map was filed in the Oswego county clerk's office March 5, 1925, after issue was joined herein and while the matter was pending before the court. Plaintiff argues very persuasively, in the course of which it traces the history of the enactment and the reasons for the holding in the railroad cases which were relied upon as authority for the decision in the *Citizens Water Works Co.* case, that the filing of the map is a condition precedent only to the " entering upon, taking or using " of the land, and that as there can be none such until the entry of judgment of condemnation, the filing of the map at the time it was, is a sufficient compliance with the section.

However, I consider that the cases above cited are binding upon this court until overruled by competent authority, and hold that the plaintiff cannot maintain this proceeding by virtue of the power of condemnation given to electrical corporations in the Transportation Corporations Law.

The third grant of power invoked by plaintiff is section 624 of

the Conservation Law, and it is under this that it must succeed, if at all. This is a part of the mass of legislation designed to conserve and more adequately utilize the natural water power within the State of New York added to the Conservation Law by chapter 579 of the Laws of 1921, and amended by chapter 242 of the Laws of 1922. This section reads as follows, omitting those parts not applicable: " Real property may be acquired pursuant to this article under an exercise of the right of eminent domain in the following cases: * * * 3. Real property, on the application of a corporation organized for the production of heat, light or power, after a determination by the public service commission that such property is necessary to the full development and utilization of a single undeveloped water power site, a major part of the head and volume of the usable flow for power at which site is owned by such corporation, for the production of heat, light or power for sale or distribution to the public and that such heat, light or power is necessary for public use. * * * Such right of eminent domain shall be exercised under the condemnation law subject to the following restrictions and limitations: * * *." (None of which apply here.)

Plaintiff being desirous of exercising the power of eminent domain therein granted, made application to the Public Service Commission of the State of New York for a determination of the fact that the property which it desires to acquire from the defendants is necessary to the full development and utilization of a single undeveloped water power site, a major part of the head and volume of the usable flow for power at which site is owned by plaintiff, for the production of heat, light or power for sale or distribution to the public and that such heat, light or power is necessary for public use, which by the statute is made a condition precedent to the exercise of the right there given. The Public Service Commission gave a hearing upon the application, and to the proceeding before the Commission the defendants were parties and were fully heard, and the Commission made the determination asked for. This proceeding was then instituted under the Condemnation Law to acquire the title.

Notwithstanding the fact that the plaintiff has brought itself within the letter of the statute, the defendants base their opposition to the granting of judgment upon the claim that this statute is unconstitutional in that it deprives the defendants of their property without due process of law, and that it denies to them the equal protection of the laws.

It may be observed that this statute is passed in the exercise of the right of eminent domain, an attribute of sovereignty which exists in

the State, and has always existed there since there has been such a thing as organized government, the right to take private property for public use. This power is inherent and does not exist because of the Constitution; it is only affected by the Constitution in that certain limitations are placed therein upon the exercise of the right. This power and its limitations can be best expressed by adopting the language of Judge VANN in *People* v. *Adirondack Railway Co.* (160 N. Y. 225; affd., *sub nom. Adirondack Railway Co.* v. *New York State*, 176 U. S. 335), as follows: " The power of taxation, the police power and the power of eminent domain, underlie the Constitution and rest upon necessity, because there can be no effective government without them. They are not conferred by the Constitution, but exist because the state exists, and they are essential to its existence. They are not rights reserved, but rights inherent in the State as sovereign. While they may be limited and regulated by the Constitution, they exist independently of it as a necessary attribute of sovereignty. They belong to the State because it is sovereign, and they are a necessity of government. The State cannot surrender them, because it cannot surrender a sovereign power. It cannot be a State without them. They are as enduring and indestructible as the State itself. (Black Cons. Law, § 123; Cooley Const. Lim. 524; Eminent Domain by Randolph, 77; Lewis, § 3; Mills, § 11.) Each is a peculiar power, wholly independent of the others, and not one of them requires the intervention of a court for effective action by the State. In the case of eminent domain, when the State is not itself an actor, compensation for property taken, unless the amount is agreed upon can be ascertained only through the aid of a court, but otherwise judicial action is unnecessary except as provided by statute. (State Const. art. 1, § 7.)

" The power of eminent domain is the right of the State, as sovereign, to take private property for public use upon making just compensation. The State has all the power of eminent domain there is and all that any sovereign has, subject to the limitations of the Constitution. Although exercised under our first Constitution, it is not mentioned therein, and it is now mentioned only for the purpose of limitation. The language of the Revised Constitution is as follows: ' No person * * * shall be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use without just compensation; ' and ' when private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the State, shall be ascertained by a jury * * *, or by not less than three commissioners appointed by a court of

record, as shall be prescribed by law.' (Const. art. 1, §§ 6 and 7.) This language, which presupposes the existence of the power outside of the Constitution, simply regulates the right to use it. It does not confer the power, but recognizing its existence, surrounds it with proper limitations. It prescribes no method of action, when the State acts for itself, but marks out certain boundaries which may not be crossed, even by the State. Within those boundaries, the State, acting through that department which exerts the legislative power, may proceed at will, and the extent, method and necessity of exercising the power to take private property for public use may not be interfered with by either of the other departments of government. (*Garrison* v. *City of New York*, 88 U. S. [21 Wall.] 196.) All private property, both tangible and intangible, is subject to the right, including that already devoted to a public use, although the latter, as matter of policy rather than of right, is protected and favored by the State to some extent. (*People* v. *Kerr*, 27 N.Y. 188; *Matter of the City of Buffalo*, 68 N. Y. 167.) While the State may delegate the power to a subject for a public use, it cannot permanently part with it as to any property under its jurisdiction, but may resume it at will, subject to property rights and the duty of paying therefor. There is no limitation upon the exercise of the power except that the use must be public, compensation must be made and due process of law observed. (*Secombe* v. *R. R. Co.*, 90 U. S. [23 Wall.] 108; *Matter of Fowler*, 53 N. Y. 60, 62.) " (Pp. 236–238.)

This right may be exercised by the State itself, or it may be delegated to a corporation or individual to whom has been delegated some public duty or function. But no corporation or individual has an absolute right to exercise the power of eminent domain even if the use to which it proposes to devote the property it desires to acquire is a public one. There must be some act of the Legislature of the State expressly conferring the power, before it can be exercised. The necessity of the taking of private property for public use is a legislative question, and the courts cannot interfere in its determination nor review the determination of the question by the Legislature. (*Joslin Mfg. Co.* v. *Providence*, 262 U. S. 668; *Sears* v. *City of Akron*, 246 id. 242; *Matter of City of Rochester* v. *Holden*, 224 N. Y. 386.) The Legislature may in its discretion grant or withhold the right. It may grant it to one corporation or individual and withhold it from another, and such withholding cannot be said to be a violation of the constitutional rights of due process of law or equal protection of the laws.

The objection made to this statute is that it grants the right of eminent domain to acquire the remaining property required for its

development, only to a corporation which is the owner of the major part of the head and volume of the usable flow for power at a site which can be developed and utilized as a single undeveloped water power site, and fails to grant such power to the owner of the minor part. That objection is directed only to the legislative determination of the necessity for the taking. The Legislature might have conferred upon any corporation or individual, whether it was or was not the owner of any part of the head or volume of the usable flow for power at a site, the right to take all of the property necessary for the full development of the possible power at that site, for the public use in the production of light, heat or power for sale or distribution to the public, and had it done so the courts would not interfere with the determination. But it did not do so; instead it gave the power to take by condemnation only when certain conditions existed and to the owner of the major part of the head and volume of the usable flow. That portion of the statute is merely a limitation upon the grant and clearly within the power of the Legislature exclusively to determine. It does not deny to the defendants the equal protection of the laws nor does it permit the taking of their property without due process of law.

Whether the use for which the property is proposed to be taken is a public one, is a judicial question for the court to determine. The object of this statute is the development to the full of all of the power which can be utilized from a single undeveloped water power site, parts of which are the property of different owners. It is a well-known mechanical fact that much more power can be produced by the development in one operation of the total head of water at a site, than the sum of the power produced by the separate development of the parts. The public use which this legislation was designed to promote was the production of heat, light or power for sale or distribution to the public. That such production and distribution by means of electricity is a public use is no longer an open question in this State. (*Matter of Niagara, Lockport & Ontario Power Co.*, 111 App. Div. 686; *Oneonta Light & Power Co. v. Schwarzenbach*, 164 id. 548; *Matter of Long Sault Development Co. v. Kennedy*, 158 id. 398, 409; *Matter of E. Canada Creek El. L. & P. Co.*, 49 Misc. 565.) Decisions to the same effect are numerous in the courts of the different States and of the United States. The proof shows conclusively that the plaintiff corporation was formed for the purpose of developing and distributing to the public generally electricity for heat, light and power purposes; that it has been for many years and now is engaged in carrying out such purposes, and is generating and distributing to the public electrical energy for such purposes.

Objection is also taken that under the proof in this case the petitioner is not entitled to maintain this proceeding, for the reason that no proof was given from which the court can determine that the petitioner is the owner of the major part of the head and volume of the usable flow for power at this site, or that the acquisition of the defendants' property is necessary to the full development and utilization of a single undeveloped water power site. Those are not issuable facts in this proceeding, and the denial of them in the answer does not raise an issue which must be determined. The statute (Conservation Law, § 624, subd. 3, added by Laws of 1921, chap. 579, as amd. by Laws of 1922, chap. 242) provides that real property may be acquired thereunder by the exercise of the right of eminent domain on the application of a corporation organized for the production of heat, light or power, " *after a determination by the public service commission* that such property is necessary to the full development and utilization of a single undeveloped water power site, a major part of the head and volume of the usable flow for power at which site is owned by such corporation, for the production of heat, light or power for sale or distribution to the public and that such heat, light or power is necessary for the public use."

Those are all facts bearing upon the question of the necessity of the taking of private property for public use, which is exclusively a legislative one. It was within the power of the Legislature to ascertain for itself those facts as applicable to the particular case, or it " has the right to designate officers, bodies or tribunals to determine the question of exigency or necessity." (*Matter of City of Rochester* v. *Holden*, 224 N. Y. 386, 390.)

This it has done in this statute, and the Public Service Commission is the instrumentality to which the Legislature has delegated the determination of those questions, and its action thereon is conclusive.

The determination by the Commission was made a condition precedent to the institution of the proceeding, and it was necessary, therefore, in the petition to allege that fact. The denial in the answer only presented the issue whether that determination had been made by the Commission, and did not open up all the matters which were before the Commission to determine. It is probable that this statute would not be obnoxious to the due process of law provision of the Constitution, if it did not provide for giving notice to defendants and an opportunity to be heard in the proceedings before the Commission antecedent to the determination of these questions before it (*People* v. *Adirondack R. Co.*, 160 N. Y. 225, 239); but in this case it appears that the defendants did have

notice of the proceedings before the Commission and appeared as parties thereto and vigorously contested all the questions involved.

Defendants further object to the maintenance of this proceeding for the reason that it appears that some of the connecting lines of the petitioner extend out of the State of New York, and that one of its subsidiary companies or customers in Olean actually sells an inconsiderable amount of power which is taken without the State, and into Pennsylvania. Defendants contend that by reason of the fact that some of the power is furnished to others than the public of New York State, it is, therefore, a private use and not a public one. With as much reason might it be said that the conducting of a railroad is not a public use and would not justify the exercise of the right of eminent domain under New York laws because some of the freight is hauled for non-residents of the State of New York, or that the road was part of an interstate system and the whole property was used in interstate commerce. The objection is not tenable. (*Matter of Townsend*, 39 N. Y. 171, 176.)

Judgment of condemnation is granted to the petitioner.