Grafton,
Dec. 6, 1927.

E. Maria Emmons *v.* Utilities Power Company.

*Winthrop Wadleigh, Clarence G. Swain* and *Robert W. Upton (Mr. Upton* orally), for the plaintiff.

*Murchie & Murchie (Mr. Alexander Murchie* orally), for the defendant.

Snow, J. At the trial it was claimed by the plaintiff, and denied by the defendant, that the plaintiff's property had a market value as an undeveloped water power. The defendant conceded that it was the plaintiff's right to establish such a value, if she could, by proof that her property was capable of development wholly upon her own land, but objected to the admission of evidence of its market value for development in conjunction with other properties, or with other power which could be utilized only through the intervention of a third party. The court accepted the defendant's theory, on which, accordingly, the trial proceeded and the verdict was rendered.

Under the adopted law of the trial, the court, subject to the plaintiff's exception, excluded evidence offered to show the presence of falls above and below her land in conjunction with some or all of which the fall upon her land was capable of commercial development by means of the defendant's dam, or by means of dams above or below (but not upon) her land; that the entire drop of the river within a short distance was in excess of one hundred feet; that the location of her property in the midst of these falls and its availability for use in conjunction therewith necessarily entered into and enhanced its market value; that the fair market value of her property depended to a substantial degree upon its relations to such other properties, and was materially greater for development therewith than when considered as a unit by itself; that taking into consideration the whole situation its development by itself and its use with the falls included

in the defendant's development, the market value of her property was between $25,000 and $40,000.

The plaintiff complains of the law of the trial which is embodied in the charge as follows: "Whether the plaintiff has a valuable water privilege in connection with the use of her land depends upon whether she could have used this privilege upon her land independently of any other land or other privileges owned by others along this stream, either across, above or below her land. In other words, this means that if you find upon all the evidence in the case that she could have developed and used to advantage and profit the power that could be obtained from her half of the stream along her property, either for manufacturing purposes, or for the production and sale of hydro-electric power by itself, or in conjunction with such an auxiliary steam plant which the plaintiff could construct to make the proposition valuable, if such could make it so, according to the plaintiff's claim, — or again, if you should find that the undeveloped water power for half the stream along her property, independently, and in and of itself, had a market value at the time the defendant took it, then you are at liberty to assess damages therefor. You are not, however, to consider whether the plaintiff's privilege had any value depending upon its development in connection with the whole width of the stream, or with the water in the river above or below her land, or also upon her ability to buy auxiliary power from some other plant. In other words, you are not to assess any value here the existence of which depends upon the ability to use the property of others, and their will to have the plaintiff do so." The plaintiff excepted to these instructions, and to the refusal of the court to charge, conversely, that in assessing damages for the taking of the plaintiff's undeveloped water power the jury were not to be restricted to a consideration of its value for development upon her property apart from other available water power, if any, upon the stream.

The plaintiff also excepted to the denial of requests, in substance and so far as the parties seem to be at issue, that in assessing her damages the jury should consider, — (2) whether the plaintiff's undeveloped water power, if any, was available for use in conjunction with the whole power upon the stream in this locality, (4) whatever in its location, surroundings and appurtenances contributed to its availability for valuable uses, (5) the adaptability, if any, of the plaintiff's land affected by the flowage for the purposes for which it was taken, (6) its value in all its parts and elements, its capabilities for any purposes for which it was adapted or likely to be used, and all

its relations to the whole water power, (7) its worth in the market, viewed with reference to the uses to which it is adapted, — that is, its worth from its availability for valuable uses, (8) the relation of the plaintiff's undeveloped water power, if any, to the whole water power upon the stream, and its availability for use as a part of such power, as bearing upon its market value, (10) the natural availability, by reason of its location on the river, of the plaintiff's land for the development of water power, based upon its natural availability for valuable use in conjunction with other water power upon the stream.

An undeveloped water power is a property right inherent in the ownership of the adjacent riparian land, for the value of which, if any, the owner is entitled to compensation when it is taken under the flowage act. *Swain* v. *Company*, 76 N. H. 498, 502. The plaintiff's damage for its taking is measured by the difference between the value of her land after the defendant had flowed it and what it would have been worth on the date of its taking (*Hadlock* v. *Jaffrey*, 75 N. H. 472, 473) if the defendant's dam had not been built, *Wright* v. *Company*, 75 N. H. 3, 6; *Philbrook* v. *Company*, 75 N. H. 599; that is, the difference between the value of the land free from, and subject to, the rights taken. *Lancaster & Jefferson &c. Co.* v. *Jones*, 75 N. H. 172, 182; *Swain* v. *Company*, *supra*. In the ascertainment of the value of the property invaded, she is entitled to have it appraised for the most profitable purpose, or advantageous use, to which it could be put on the day it was taken. *Barker* v. *Company*, 78 N. H. 571, 575; *Philbrook* v. *Company*, *supra*. It appears to be conceded that flowage is the most profitable use to which the plaintiff's property can be put.

There is no rule of law that the value of land taken by eminent domain is measured solely by its capacity for valuable uses in and of itself without regard to such external elements, if any, as would probably have affected the judgment of a purchaser at a fairly conducted sale. *Mississippi &c. Boom Co.* v. *Patterson*, 98 U. S. 403, 407, 408; *Little Rock &c. R. R. Co.* v. *Woodruff*, 49 Ark. 381. On the contrary, this court has said that "In assessing the plaintiff's damages the question was, What was the fair market value of the land at the time it was taken by the defendants? In determining that question whatever in its location, surroundings, and appurtenances contributed to the availability of the land for valuable uses, was proper evidence to be considered by the jury in estimating its salable character, and ascertaining its market value"; which the court proceeded to define as "the sum it could have been sold for, on a certain day, at a fairly conducted sale attended by bidders, each duly understanding all such

matters of legal right, upon facts then known to him, as would induce him to buy, and affect his judgment in determining what price he would offer." *Low* v. *Railroad*, 63 N. H. 557, 562.

"The fact that the most profitable use could be made only in connection with other land is not conclusive against its [adaptability thereto] being taken into account, if the union of properties necessary is so practicable that the possibility would affect the market price. But what the owner is entitled to is the value of the property taken, and that means what it fairly may be believed that a purchaser in fair market conditions would have given for it in fact, — not what a tribunal at a later date may think a purchaser would have been wise to give, nor a proportion of the advance due to its union with other lots." *New York City* v. *Sage*, 239 U. S. 57, 61. "The fact that it [the land] was so situated as to be available for a union with other lands to make up a reservoir site may have had effect in adding to the amount obtainable for it by the owner from some one desiring to buy it. It was open to the defendant to prove the market value of his land, by whatever circumstances or influences that value may have been affected." *Medina Valley &c. Co.* v. *Seekatz*, 237 Fed. Rep. 805, 807. The true rule seems to be that the enhanced market value, if any, of the plaintiff's land due to its adaptability for valuable uses in conjunction with other properties may be shown if the practicability of the combination of all the necessary properties upon which such availability depends was at the time of the condemnation so great as to have probably affected the public mind, and therefore to have enhanced the price which a purchaser might be expected to give.

The defendant's taking of the plaintiff's undeveloped water power under the flowage act is an admission, so far as the properties of the parties are united in the defendant's proposed development, of the feasibility of such a combination, and a confession of its willingness to pay the plaintiff the fair market value of the property taken. Both parties are in the market for such a combination, the defendant of its own volition, and the plaintiff by virtue of the defendant's exercise of the power of eminent domain.

The plaintiff's offer of proof was in substance that the fair market value of her property depended in a substantial degree upon its location in the midst of a larger fall, and that such value was materially greater for development in conjunction with other properties than for independent development wholly upon her own land. The plaintiff's principal grievance presented in argument is that she was deprived by the law of the trial from showing such enhanced market value.

As we interpret the record, the evidence was not excluded because of any lack of the qualifications of the witnesses, or as an exercise of discretion, but because of the lack in probative value as a matter of law. This was error. It cannot be said as a matter of law in advance of the submission of the proffered evidence, that the adaptability of the plaintiff's property for development and use in conjunction with the properties of others adjacent thereto, above or below, may not have been so patent, that the possibility of the combination of the properties essential to such development may not have been so promising, and that the demand for the plaintiff's property for the purpose of such a combination may not have been so great, that the judgment of prospective purchasers would not have been affected thereby, and the market price of her said property, therefore, enhanced. The exclusion of all evidence of the alleged enhanced market value of plaintiff's property by reason of its adaptability for development in conjunction either with the defendant's property, or with that of others, precluded the plaintiff from her rightful opportunity to show such value if she could. Whether the evidence would have sustained her offer with respect to any given combination is quite another question, and one which was not reached.

The foregoing conclusion makes it unnecessary to consider the plaintiff's further exceptions. But as there must be a new trial some of the general principles involved, as disclosed by the record and arguments, have been considered.

The defendant assumes in argument that one of the plaintiff's contentions is that she is entitled to have her undeveloped water power appraised at what it is worth to the defendant, computed upon the proportion which the fall upon her land bears to the whole falls involved in the defendant's development. See plaintiff's requests Nos. 2 and 6. Although the plaintiff does not expressly concede such to be her claim the position of her counsel at the trial and in argument affords ground for the defendant's assumption. Such a contention has therefore been considered.

When the property has a special utility to the taker and to others who could have used it for the purpose for which it is sought, and that utility is such that it would probably have affected the judgment of one desiring to purchase, such utility may be shown. *United States* v. *Company*, 271 Fed. Rep. 877, 893; *United States* v. *Company*, 229 U. S. 53, 76, 77; *Simpson* v. *Shepard*, 230 U. S. 352, 451; 10 R. C. L., Em. Dom., s. 115; *Currie* v. *Railroad*, 52 N. J. Law 381, 395; *Mississippi &c. Boom Co.* v. *Patterson*, 98 U. S. 403, 407, 408. In other words,

the landowner is not precluded from proving the market value of his land for its most valuable use merely because it is being taken for that use. This incidentally disposes of the plaintiff's exception to the denial of her request No. 5. On the other hand, the value to the condemnor of the land taken is not the measure of its market value. *Lancaster & Jefferson &c. Co.* v. *Jones*, 75 N. H. 172, 183. A new situation has been created by the taking. The condemnor has eliminated all uncertainty of effecting the combination of the properties. But the issue is still, what was the market value of the land in its undeveloped and separate state? The test is always the market value of the land when taken and "not the value which it might have under circumstances different from those then existing." 2 Lewis, Em. Dom. (3d *ed.*), *s.* 707. Whether or not its worth to the taker may be evidence (*Lancaster & Jefferson &c. Co.* v. *Jones, supra,* 182) from which deductions may properly be made tending to demonstrate such market value depends upon circumstances which are not disclosed by the record, and upon which it would be useless to speculate.

No legal formula known to the law exists for the apportionment of the values of constituent properties which in the aggregate may be capable of development as a single power plant. The qualities, condition, extent and the prior use of the several tracts, as well as the part which each will play in the proposed unified property, so differ in kind and degree as to make any general rule inapplicable. On the other hand, if the landowner lays claim to an enhanced value of his property by reason of its adaptability by combination with other properties for a specified development it cannot be said as a matter of law that the evidence may not disclose facts which would justify comparisons of the several parts with the mooted whole, and give rise to inferences as to the relative importance and proportional value of each part to the whole; and that in such a case the value of the whole may not be of aid to the jury in working out the value of any constituent part. If in any given combination the proportional value of the land taken could be thus deduced it would not, however, be the test of the landowner's damages. Such deduced value would only be evidence bearing upon what a purchaser, having in mind the prospective union of the several properties, would probably have paid for that of such landowner. As we have seen, it must be constantly borne in mind, that, in ascertaining the value of the landowner's property for any supposed combination, we are dealing with the separate properties before the taking, and not with a unified plant.

The plaintiff relies particularly upon *Amoskeag &c. Co.* v. *Worcester,*

60 N. H. 522, 525, 526, in which this court approved of instructions "that the jury, in assessing the damages, were to decide how much the market value of the defendants' land had been lessened by the [plaintiff's] dam and flashboards; and in determining this, they should consider the value of the land in all its parts and elements, its capabilities for agricultural, manufacturing, or any other purposes for which it was adapted or likely to be used, and all its relations to the whole water-power." See request No. 6. The plaintiff places particular stress upon the last eight words of the instructions. The court there, and elsewhere, in that opinion makes it clear that the issue submitted to the jury was the ascertainment of the market value of the plaintiff's riparian land before it was taken and not its value as a part of a unified property. The case is authority for the principle that the plaintiff's undeveloped water power here may be considered in its relation to the whole of any mooted combination, but only to the extent that the probability of such a union would have affected the mind of a prospective purchaser of the plaintiff's power in its unimproved state at the time it was taken. If the holding in the *Worcester* case were otherwise in doubt it is made plain by the court's sole comment upon the approved instructions, namely, that they "were not different in principle from the doctrine of *Boom Co.* v. *Patterson*" (98 U. S. 403, 407, 408), which it specifically quotes: "In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses?" In the *Patterson* case the court amplified the principle above quoted as follows: "Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it, and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated." This and other portions of the opinion make it clear that the "adaptability for boom purposes" of the landowner's property was that which it "previously possessed," and that its "availability for valuable uses" was to be received as evidence only so far as it bore on its market value before it was taken.

The federal court further recognized the difficulty of laying down

any general rule, saying: "So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is, perhaps, impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future."

The principles of the federal case have been adopted by this court not only in the *Worcester* case but in *Low* v. *Railroad*, 63 N. H. 557, 562, and have been followed in a long line of well considered cases in both federal and state courts. The doctrine of these cases fully sustains the conclusions we have reached, namely, that the plaintiff, in the proof of the market value of her land, is not restricted to evidence of its value for development within itself; but affords no basis for the plaintiff's position that she is entitled to share in the enhancement of the value of the constituent properties accruing to the defendant by reason of the union which it has effected.

The numerous potential combinations of properties upon which the alleged enhanced value of the plaintiff's undeveloped water power may be predicated under her broad and indefinite offers of proof are not disclosed by the record. It seems inadvisable to attempt to deal in advance with the questions which may be involved therein. "Guarded by the exclusion of speculative opinions on the one hand and the individual advantages to the condemning agent on the other" (*Currie* v. *Railroad*, 52 N. J. Law 381, 397; 1 Nichols, Em. Dom. (2d *ed.*), ss. 218, 219) the principles herein announced are deemed sufficient for the guidance of the trial court.

For the reasons hereinbefore stated the order here must be

*New trial.*

All concurred.