In the Matter of the Application of the NIAGARA, LOCKPORT AND ONTARIO POWER COMPANY to Acquire Title to Property of PERCY W. HORTON and Others.

Supreme Court, Onondaga County, August 4, 1928.

*Purcell, Cullen & Pitcher* [*Henry W. Killeen* and *Warren Tubbs* of counsel], for the plaintiff.

*Morehouse & Morehouse* [*Delos M. Cosgrove* and *Hughes, Schurman & Dwight* of counsel], for the defendants.

CHENEY, J. This is a proceeding in condemnation instituted under section 624 of the Conservation Law (added by Laws of 1921, chap. 579, as amd. by Laws of 1922, chap. 242). Issues were raised and the case was tried and judgment of condemnation granted. (125 Misc. 269.) By that judgment commissioners were appointed, who have viewed the property, heard the testimony of the parties, and have made their report wherein they find that the value of the property and rights taken is $15,000, and have awarded that sum to the property owners. The motion to confirm this award is now before the court.

Section 15 of the Condemnation Law (as amd. by Laws of 1926, chap. 612), under which this proceeding is conducted, provides that the court may confirm the report, or may set it aside for irregularity, or for error of law in the proceedings before the commissioners or upon the ground that the award is excessive or insufficient. The principles which should govern the court upon the determination of such a motion are very well settled by the decisions. It is that every intendment is in favor of the action of the commissioners, and that the report will not be disturbed unless it is apparent that injustice has been done, or they have proceeded upon an erroneous principle of law, or have been influenced by prejudice, or have overlooked or disregarded the evidence. (*Matter of Manhattan R. Co.* v. *Comstock,* 74 App. Div. 341; *Matter of Corporation Counsel of City of New York* [*Matter of William & North William Sts.*], 188 id. 668.)

The only claimed error of law by the commissioners which has been pointed out was the striking out of the testimony of the witness Robert Horton offered by the defendants. Defendants assert that this evidence was competent upon the theory that the defendants were entitled to have the value of their property taken tested by the most profitable use to which it could be put, and the claim is made that, because of the fact that this property is so situated physically between the property of the plaintiff upstream and the property of the plaintiff downstream, and that the three properties could be developed together as one single water power and thereby utilize all of the flow and fall of the stream upon all three properties, might give to defendant's property an additional value above that which would be indicated by a power development exclusively upon its own land, and that such additional value would be reflected in the market value.

There is no doubt but that, in the application of the constitutional rule that private property shall not be taken for public use without just compensation, just compensation is to be measured by the value of the property of which the owner is deprived. That value

has been defined to be the market value of the property; that is, what it would sell for in the open market with a willing seller and a willing buyer. In the determination of that question there are many cases which hold that the owner is entitled to have considered the adaptability of the land to the purpose for which it could be most profitably used. In that connection there are cases that hold that, when it is shown that by reason of natural conditions the property taken is adaptable for valuable use in conjunction with other properties, the fact of any enhancement of its market value by reason of such condition may be shown and considered. (*Boom Co.* v. *Patterson*, 98 U. S. 403; *Ford Hydro-Electric Co.* v. *Neely*, [C. C. A.] 13 F. [2d] 361; *Brown* v. *Power Co.*, 140 N. C. 333; *Rankin* v. *Town of Harrisonburg*, 104 Va. 524; *Emmons* v. *Utilities Power Co.*, —— N. H. ——; 141 Atl. 65.)

But the principles applicable to the effect that could be given to evidence of this character were fully explained in *City of New York* v. *Sage* (239 U. S. 57) as follows: " The decisions appear to us to have made the principles plain. No doubt when this class of questions first arose it was said in a general way that adaptability to the purposes for which the land could be used most profitably was to be considered; and that is true. But it is to be considered only so far as the public would have considered it if the land had been offered for sale in the absence of the city's exercise of the power of eminent domain. The fact that the most profitable use could be made only in connection with other land is not conclusive against its being taken into account, if the union of properties necessary is so practicable that the possibility would affect the market price. But what the owner is entitled to is the value of the property taken, and that means what it fairly may be believed that a purchaser in fair market conditions would have given for it in fact — not what a tribunal at a later date may think a purchaser would have been wise to give, *nor a proportion of the advance due to its union with other lots.* The city is not to be made to pay for any part of what it has added to the land by thus uniting it with other lots, if that union would not have been practicable or have been attempted except by the intervention of eminent domain. Any rise in value before the taking, not caused by the expectation of that event, is to be allowed, but we repeat, it must be a rise in what a purchaser might be expected to give."

Stating the rule in another way, it is that it must appear that the market value of the land is enhanced by its adaptability to the special use, and that the land is marketable for that use or at least that there is reasonable expectation of some demand within a reasonable time for the use of the land for that purpose. The

landowner is not entitled to any compensation merely by reason of the fact that the land is peculiarly adapted to the use for which it is taken. (*Matter of Simmons,* 130 App. Div. 350, 356; affd., 195 N. Y. 573; affd., *sub nom. McGovern* v. *City of New York,* 229 U. S. 363; *Matter of Daly* v. *Smith,* 18 App. Div. 194; *Matter of Bronx Parkway Commission* [*Kraft*], 191 id. 212; *U. S.* v. *Chandler-Dunbar Water Power Co.,* 229 U. S. 53, 79; *Matter of Board of Water Supply of City of New York,* 121 Misc. 204; affd., 209 App. Div. 841; *New York Cent. R. R. Co.* v. *Maloney,* 234 N. Y. 208.)

There is another rule which has been well settled by the decisions which must be considered in this connection, and that is that compensation which can be awarded for lands taken does not include anything for the value or benefit to the party taking, as distinguished from the injury to the owner. (*Matter of Simmons, supra; Matter of New York, Westchester & Boston R. Co.,* 151 App. Div. 50; *New York Cent. & H. R. R. R. Co.* v. *Mills,* 160 id. 6.)

The testimony of the witness Horton, the striking out of which is alleged as error, is all in the record, and it is plain that it is not based upon any such theory, as the courts have held in the cases above cited that evidence is admissible to show that the market value of the land is enhanced by its adaptability to a special use in connection with other property. In that evidence the witness constructs a hypothetical plant, utilizing all the head and flow of the river upon the plaintiff's land both above and below the defendant's land, and that upon the defendant's land. He then estimates the cost of that plant and its probable return, giving a supposititious net return, which he capitalizes upon a hypothetical basis, and gives the value of the plant which he has thus created at such figure. This gross value for the combined plant he distributes among the properties contributing to it, upon some basis not clearly defined by the evidence, and then states that the market value of the defendant's property is the amount of the combined value which he has distributed to it. That such is the fact is clearly evident from an answer made by the witness on cross-examination to the question: " Then I take it the only figure of the market value of the Horton property that you have given us has been based upon the contribution which the Horton property can and should make, I suppose, to the 65 feet development? "

The answer is: " Yes; I have considered that as the best utilization of the property, and based my figures on the assumption that the fair market value would be determined by its contribution to a complete development of the available power at that location, a 65-foot gross head."

This also appears by the statement of defendant's counsel in the

argument of the motion to strike out: "We claim that inasmuch as they seek under the statute to develop their property with ours into one development that we have the right to show how much of the value of the whole project our property contributes."

It is clear from the authorities above cited that the commissioners would not be justified in awarding compensation upon any such theory. In the case of *Emmons* v. *Utilities Power Co.* (—— N. H.——; 141 Atl. 65), which is strenuously pressed upon the court as an authority showing that the commissioners were in error, the court said: "No legal formula known to the law exists for the apportionment of the values of constituent properties which in the aggregate may be capable of development as a single power plant. The qualities, condition, extent, and the prior use of the several tracts, as well as the part which each will play in the proposed unified property, so differ in kind and degree as to make any general rule inapplicable. On the other hand, if the landowner lays claim to an enhanced value of his property by reason of its adaptability by combination with other properties for a specified development, it cannot be said as a matter of law that the evidence may not disclose facts which would justify comparisons of the several parts with the mooted whole, and give rise to inferences as to the relative importance and proportional value of each part to the whole, and that in such a case the value of the whole may not be of aid to the jury in working out the value of any constituent part. If in any given combination the proportional value of the land taken could be thus deduced it would not, however, be the test of the landowner's damages. Such deduced value would only be evidence bearing upon what a purchaser, having in mind the prospective union of the several properties, would probably have paid for that of such landowner. As we have seen, it must be constantly borne in mind that, in ascertaining the value of the landowner's property for any supposed combination, we are dealing with the separate properties before the taking, and not with a unified plant."

The difference between that case and this is that there the court excluded all evidence of the feasibility of a joint development, while in this case the evidence proposed was all before the commissioners and it was evident that it was based on the wrong theory and, therefore, clearly incompetent. It was, therefore, properly stricken out.

The report is accordingly confirmed. There remains to be determined the matter of costs. It appears that the defendants interposed an answer raising issues and requiring a trial. Those issues were tried and the defendants were beaten and a judgment of condemnation granted, in which was appointed the commissioners to determine the compensation to be paid for the property taken.

Under such circumstances the plaintiff is entitled to the costs of the trial of the issue before the court, and the defendants to a full bill of costs for the proceedings before the commissioners. (*Matter of Village of Theresa*, 121 App. Div. 119.) The defendants are entitled to an extra allowance of costs of five per centum of the award.

It also appears that the property taken with others is subject to a mortgage in an amount more than the amount of the award, and the final order will contain appropriate provisions for the paying of the award to the mortgagee in case proper release from the owners is obtained, in default of which the award may be paid into court to await its further order.

An order may be prepared in accordance with this memorandum.