In the Matter of the Application of NIAGARA, LOCKPORT AND ONTARIO POWER COMPANY, Respondent, Relative to Acquiring Title to Certain Real Property in the Town of Orwell, Oswego County, New York, for the Purpose of Constructing, Maintaining and Operating an Hydro-Electric Power Plant to Furnish Electricity for Light, Heat and Power Purposes for Public Use, etc., against PERCY W. HORTON and Others, Appellants.

Fourth Department, January 21, 1931.

*Cobb, Cosgrove, Harter & Wright,* for the owners; *Hughes, Schurman & Dwight,* for the incumbrancer [*Randall J. Le Boeuf, Delos M. Cosgrove, Allen S. Hubbard* and *Loren E. Harter* of counsel], for the appellants.

*Purcell, Cullen & Reynolds* [*Henry W. Killeen, Francis E. Cullen, Warren Tubbs* and *Charles R. Sweeney* of counsel], for the respondent.

CROSBY, J. This is a proceeding conducted under the Condemnation Law, pursuant to authority of subdivision 3 of section 624 of the Conservation Law (as amd. by Laws of 1922, chap. 242). Briefly the statute provides that the owner of " a major part of the head and volume of the usable flow " of " a single undeveloped water power site " may acquire the minor rights by condemnation proceedings, after first obtaining from the Public Service Commission a certificate (1) that the power site sought to be condemned is a single one; (2) that the corporation seeking the certificate is the owner of the major part thereof; (3) that the property sought is necessary for the full development and utilization of the undeveloped single site; (4) that the power sought to be developed is necessary for a public use, and (5) that the party seeking the certificate is a corporation organized for heat, light and power purposes.

That certificate the plaintiff herein secured. Defendants opposed the granting of the certificate on the ground that the statute hereinbefore referred to was unconstitutional, and on the further ground that, even if the statute should be held to be constitutional, the premises in question did not constitute a single power site, dealt with by subdivision 3 of the act, but, rather, two sites, such as to give them certain rights of participation in the development as provided by paragraph (b) of subdivision 3 of section 624. The determination of the Public Service Commission (32 State Dept. Rep. 211) was affirmed by the courts in 220 Appellate Division, 351, and later in 248 New York, 215. Appeal to the United States Supreme Court was dismissed on the ground that no Federal question was involved. (278 U. S. 579.)

While the validity of the determination of the Public Service Commission was being determined, this condemnation proceeding was gotten under way, and resulted in an interlocutory judgment of condemnation (125 Misc. 269). A hearing was had before the commissioners, and their award of $15,000 was confirmed at Special Term (133 Misc. 177). The present appeal is from the final order of confirmation of the award in the condemnation proceeding. There is also here an appeal from an order denying defendants' motion to recommit the matter to the commissioners in order to secure from them a further report " upon the question whether or not defendants' property had an enhanced market value by reason of its availability for use in connection with other property not owned by defendants."

We think that the order to recommit the matter to the commissioners in condemnation should have been granted for reasons hereinafter stated.

Defendants produced a witness, one Horton, who duly qualified as an expert on land values, particularly as to the value of land adapted to power development. He gave it as his opinion that the land in question had a market value of $269,000. In addition, this witness gave much testimony bearing on the situation and character of the land in question, its location in reference to other lands having possibilities for power development, and many other facts and circumstances that might properly be considered in determining the market value of the land. This evidence was all stricken out by the commissioners after this witness told, upon cross-examination, how he arrived at his valuation. Briefly, the witness arrived at the valuation by determining what it would cost to build a water power plant by the use of the defendants' property, sought to be condemned, together with the land already owned by the plaintiff, by determining the net income to be derived from such a plant, by capitalizing this net income, and by awarding to defendants such a proportionate share of the whole capitalized income as is represented by the ratio between the defendants' land in its undeveloped state to the whole property in its undeveloped state. At one place in his testimony this witness said: "I do not consider that fair market value is necessarily the result of a mathematical calculation, but mathematical calculations are often necessary to arrive at a true understanding, and then knowledge based on experience is applied to those results to determine the fair market value."

At another place in his testimony this question and answer appear: "Q. Then I take it the only figure of the market value of the Horton property that you have given us has been based upon the contribution which the Horton property can and should make, I suppose, to the 65 feet development? [The 65 feet development being the total development of the combined properties of both plaintiff and defendants.] A. Yes, I have considered that as the best utilization of the property and based my figures on the assumption that the fair market value would be determined by its contribution to a complete development of the available power at that location a 65 foot gross head."

The commissioners concluded that the witness had adopted an erroneous theory of damages and struck out, not only his answer that the land in question had a market value of $269,000, but all of his testimony. This was error. To be sure, if the defendants mean to claim that the value of defendants' land is conclusively "determined" by the proportionate share which defendants' land contributes to a completed development builded upon, and by the use of defendants' land combined with plaintiff's land, such claim

is not supported by the authorities. (*Emmons* v. *Utilities Power Company*, 83 N. H. 181; 141 Atl. 65; *Matter of Simmons*, 130 App. Div. 356; affd., 195 N. Y. 573; *Cedar Rapids Manufacturing & Power Co.* v. *Lacoste*, L. R. 1914 App. Cas. 569; *City of New York* v. *Sage*, 239 U. S. 57.)

Defendants are not entitled to a valuation mathematically fixed and determined by the proportionate contribution of their land to a completed plant, to be erected by means of plaintiff's capital, at plaintiff's business risk, upon the combined lands of defendants and plaintiff.

But defendants are entitled to the fair market value of their land for its highest and best available use. And this is true even though that best available use be use in connection with other lands, whether owned by defendants or by plaintiff or by strangers to the parties. The defendants are not entitled to have for their land what it may be worth to the plaintiff, nor what it would damage plaintiff not to be able to obtain it. They are entitled to what it is worth on the market for the best use to which it is adaptable.

And when a witness, duly qualified as an expert to give evidence on the question of value, gave his opinion as to value, his evidence should not have been stricken out, but should have been considered for what it was worth, in view of all that he said in regard to the method by which he arrived at his conclusion, and keeping in mind the true measure of damages.

The commissioners themselves fell into an error in deriving the value of defendants' land by erecting a hypothetical power plant upon that land alone and capitalizing the net income from such imaginary plant. The market value of defendants' land might be greater than the value derived from its use for a separate power development. It might be less. The commissioners should seek to arrive at market value for the best use for which the land is immediately available. The testimony of witnesses who qualify themselves as experts on land values in the community may be found helpful to the commissioners in arriving at market value. Testimony of those witnesses as to the methods by which they arrive at their conclusions will be helpful in determining the probative value of their testimony, but all the while it must be kept in mind that the true measure of damages in these cases is the market value of the land for its most profitable use.

The order of confirmation should be reversed on the law, and the order denying recommitment should be reversed on the law, and the motion to recommit should be granted, the recommitment

to be to the same commissioners to take further proof, hear the parties, and make a new determination.

All concur. Present — CROUCH, TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Final order reversed on the law, with costs to the appellants to abide the event. Order denying motion to recommit reversed on the law and motion to recommit to the same commissioners granted, in the exercise of discretion, to take additional testimony, to rehear the parties and make a new report.