No. 81-559

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

IN THE MATTER OF:

THE CREATION OF THE WEST GREAT FALLS FLOOD CONTROL
AND DRAINAGE DISTRICT

Ex Rel:

RICHARD AND GERDA GREENWOOD,

Appellants.

Appeal from:  District Court of the Eighth Judicial District,
              In and for the County of Cascade, The Hon. H.
              William Coder, Judge presiding.

Counsel of Record:

    For Appellants:

            Leo Graybill, Jr., Graybill, Ostrem, Warner &
            Crotty, Great Falls, Montana

    For Respondent:

            Swanberg, Koby, Swanberg, & Matteucci,
            Great Falls, Montana

                          Submitted on Briefs:  May 6, 1982

                                    Decided:  July 16, 1982

Filed: JUL 16 1982

Thomas J. Kearney
                          Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Appellants own ten platted lots in the Sun River Park Addition on the west side of Great Falls. The West Great Falls Flood Control and Drainage District condemned these lots for the purpose of building a levee thereon and offered the appellants approximately $35,000 for the land. The drainage project's appraiser based this valuation upon consideration of the land as a single tract. The appellants contend that they are entitled to approximately $55,000--the value their appraiser derived by considering the property as ten platted lots.

The appellants filed a remonstrance in the Cascade County District Court, and the matter was heard on January 7, 1981, and February 2-4, 1981. The District Court required the appellants to come forward with their evidence and gave them the burden of proving their damages.

The District Court awarded the appellants approximately $38,000. This figure was approximately the same value that the Drainage District had recommended that the appellants be awarded. This appeal followed.

The issues on appeal can be summarized as follows:

1. Do the appellants have a right to be compensated for their land according to its value as platted lots, rather than according to its value as a single tract?

2. Who has the burden of proof in this type of proceeding and in what order should it be presented?

Appellants contend that, because their land was subdivided and the plat recorded, it should have been valued on an individual lot basis rather than as a whole tract. The appellants argue that the land must be divided into lots for

-2-

its highest and best use--residential property.

In State v. Hoblitt (1930), 87 Mont. 403, 288 P. 181, this Court discussed the method that must be applied to arrive at the highest and best use by stating:

> "The owner has the right to obtain the market value of the land, based upon its availability for the most valuable purpose for which it can be used, whether so used or not (Montana Ry. Co. v. Warren, 6 Mont. 275, 12 P. 641), but to be available for a purpose means capable of being used for the purpose (Webster's New Int. Dictionary), and, as the market value at the date of the summons controls, the land must be shown to have been marketable at that time for the purpose stated (In re Niagara Power Co., 133 Misc. Rep. 177, 231 N.Y.S. 72); the showing must be that the use is one to which the land may reasonably be applied (Bloxton v. Highway Commission, 225 Ky. 324, 8 S.W.2d 392), such as would probably affect a purchaser (Emmons v. Utilities Co., 83 N.H. 181, 141 A. 65, 58 A.L.R. 788).
>
> "Lewis, in his work on Eminent Domain (3d Ed.) vol. 2, p. 1232, says: 'It is said in some cases that it is proper to consider every element of value which would be taken into consideration in a sale between private parties. But this needs some qualifications, since remote and speculative reasons are often urged by the seller in support of the valuation claimed. Some cases say the owner is entitled to the value of the property for the highest and best use to which it is adapted. This is true so far as such adaptation affects the market value. But the proper inquiry is, not what is the value of the property for any particular use, but what is it worth on the market, in view of its adaptation for that or any other use.'
>
> ". . .
>
> "Speculative uses, remote and conjectural possibilities, are not to be taken into consideration, as the land must, at the date of the summons, have been 'available' for the more valuable use shown . . .
>
> "The rule announced in the Warren and Forbis Cases, above, must be applied in the light of the statutory provision that compensation must be determined on the basis of the market value of the land at the date of the summons, and, while the owner is entitled to show the

-3-

most valuable use for which the land is available, this is merely for the purpose of fixing the actual highest market value at the time specified, and discussion of uses to which the land is not then put is but sales talk, persuasive only in so far as it would convince a prospective purchaser that the price asked is reasonable under all of the circumstances shown; the jury stands in the position of the purchaser. For this reason it is said the test is, 'What is the market value of the land condemned for any commercial value [use?] of its own in the immediate present, or in reasonable anticipation in the near future? . . ." 288 P. at 185-186.

The most important language from Hoblitt applicable here is, "to be available for a purpose capable of being used for that purpose, . . . the land must be shown to have been marketable at that time for the purpose stated . . ." Here, the land was unfit for the purpose stated by appellants because there were flood zoning restrictions which prevented the land from being used for residential purposes. Also, there was no indication from the record that these restrictions will be lifted before the project is completed.

The second issue raised by appellants concerns the procedural question of who has the burden of proof in a drainage district condemnation action and in what order should it be presented. It is evident from the record that the appellants did not raise this issue at the trial court level. There are no citations necessary, for it is axiomatic that unless an issue is raised on the trial court level it will not be addressed by the appellate court unless the issue raised is of constitutional import.

The judgment of the District Court is affirmed.

_____
Justice

-4-

We concur:

_____
Chief Justice

_____

_____

_____
Justice