## CENTRAL GEORGIA POWER COMPANY v. STONE.

1. After a witness had given his opinion of the value of land which it was claimed would be subject to consequential damages by reason of condemning another part of the tract, and stated that the pond created by the condemner caused injury to the balance of the land, there was no error in permitting him to give his opinion that the value of the balance would be decreased $20 an acre.

(a) Inaccessibility to market from the balance of a farm, resulting from condemning a part of it and flooding it with water, is a legitimate subject of consideration by a witness in estimating the decreased market value of the part not taken.

2. A mere disconnected statement of the husband of the owner of land sought to be condemned, that he had been offered $100 an acre for it twenty years before, would not be admissible.

(a) Such statement appears to have been made on cross-examination, and is part of the sentence: "I told you up there that I was offered $100 an acre for that bottom land twenty years ago." If the evidence was drawn out by counsel for movant in the motion for a new trial, it would furnish no ground for reversal.

3. Where a witness testified to his familiarity with the land, a part of which was sought to be condemned, that he had seen the crops growing on it, and that the bottom land was fertile and easily irrigated, and

gave his opinion that it was worth $200 per acre, there was no error in refusing to rule out the estimate because on cross-examination he testified that he never bought any land "up that way," that the price of land differed in different communities, that he did not know the value of land in that particular community, that he was farming in the edge of an adjoining county, and "sorter dabbled in real estate around here," and that he had never seen or heard of any one paying $200 per acre in that community (stating on redirect examination that he did not know of any sales which had taken place "up there"). Such facts, elicited on cross-examination, went to the credit to be given to the evidence, rather than to its admissibility.

4. Where a witness testified that he had been acquainted with certain land for about forty years, had lived in about seven miles of it, had been upon it and seen it in cultivation, and that he had knowledge of the land and was acquainted with its market value, and that on account of his knowledge of lands in the county and acquaintance with them as a farmer he considered himself competent to give an opinion of the market value, his opinion was admissible, although he also stated that he could not say positively that he knew the market value of land in that section, that he had known of only two pieces being sold in twenty years, and that he had been on the tract of land about two years previously but had not seen the particular part of it sought to be condemned in four or five years.

5. In a proceeding to condemn certain land for use as a part of a reservoir by a company intending to produce electric power and lights, a witness offered as an expert by the landowner testified that the water-power belonging to the owner was worth $2,500. On cross-examination the witness testified that the stream which ran along the property had a fall of but a foot and a half within the boundaries of the tract, and that no dam could be there erected or water-power utilized, but that he based his estimate upon a calculation or opinion that the condemner or some other person could build a dam some distance further down the stream (at the point where the condemner was actually proceeding to do so), and could erect buildings, provide machinery, and operate the works at a certain estimated cost, and could produce a certain horse-power of an estimated value; that the volume and flow of water passing along the edge of the land sought to be condemned could produce a certain horse-power, which, compared with the total horse-power produced at the dam, would make the water-power of the landowner worth a sum stated. *Held*, that such estimate of value was founded on an improper basis, and should have been excluded from evidence, on motion.

(a) The estimate of another witness offered by the landowner as an expert, that the land taken was worth a certain sum per acre, which was shown to rest on a similar basis, should also have been excluded on motion.

6. The error in the admission of this evidence also affected the charge, and certain portions of it apparently depended upon this evidence. There was also some inaccuracy in expression in portions of the charge to which exception was taken.

FEBRUARY 12, 1913.

27

Appeal from condemnation. Before Judge J. B. Park. Jasper superior court. November 28, 1911.

*Walter T. Johnson, Greene F. Johnson,* and *Hatcher & Smith,* for plaintiff in error. *W. S. Florence,* contra.

LUMPKIN, J. The Central Georgia Power Company proceeded to condemn certain land belonging to Mrs. B. J. Stone, for the purpose of flooding the same in connection with its power-plant for the generating of electricity by water. From the award of the assessors an appeal was entered by the landowner. The jury found in her favor $2,953.53. The condemner moved for a new trial, which was denied, and it excepted.

1-4. The first four headnotes are self-explanatory.

5. Two witnesses were sworn as experts. One of them stated that, in his opinion, the market value of the landowner's water-power capable of being developed, taking into consideration the fall, the volume, and the speed of the stream, and that she owned a half interest, that is to the thread of the stream, was $2,500. The other testified that, in his opinion, taking into consideration that the property to be taken would be covered by water from ten to twenty feet deep, and considering its inadaptability for water-power or reservoir purposes, it was worth $175 to $225 per acre. On cross-examination of these witnesses, it appeared that the Ocmulgee river ran along the land to be taken for some little distance, and in that space had a fall of a foot and a half, and that no dam could be built at that point, and no water-power developed there. The basis on which they formed their estimates of value was, in effect, that a dam could be built several miles further down the stream, at a point where the condemner's dam was located; that an estimated number of horse-power could be there developed, which ought to be worth a certain sum per horse-power; that, considering the quantity of water which ran by the property of the owner, and the fall of a foot and a half, this would produce a given horse-power, and hence its proportion of the entire horse-power produced at the dam would be a stated per cent. or fraction; and, therefore, the value of the water-power on the land could be estimated. One of the witnesses went more into details than the other, and gave estimates of the cost of the dam, machinery, operation, etc., including even a bond issue and an allowance for the promoters of the enterprise. Objection was made to the estimates of value

founded on such a basis, and a motion to rule them out was also made. Both were overruled. This was error. In condemnation proceedings, as to land taken, the question is, what is its market value? The market value is the price which it will bring when it is offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who wishes to buy, but is not under a necessity to do so. In determining what this market value is, the jury are not confined to considering the use to which it is actually being put by the owner. He may have used a valuable corner for a stable or for a pigsty. But he is not obliged to have it priced on that basis. The character, location, size, and shape of the property, and its availability for different uses may be shown. A corner lot in a town may be proved to be adapted to use as a garden, or as a location for a residence, or for a site for a store or office building. This may not only increase the number of probable buyers, but also the probable price which a buyer would pay for it. If it were proved that the lot had a coal or iron deposit under the surface, this would be for consideration in estimating the market value. And so of other possible elements, such as suitability for a bridge-site or a dam or reservoir. These would not furnish separate items for recovery, but would be legitimate for consideration in estimating market value. *Harrison* v. *Young,* 9 *Ga.* 359; *Central Georgia Power Company* v. *Mays,* 137 *Ga.* 120 (72 S. E. 900), and citations. But this is an entirely different thing from undertaking to prove that the condemner can spend so much money in improvements, or in a business to be established on the land, and can make an estimated profit, and estimating the market value on the basis of prorating the contribution of the landowner to the total result. To enter into the possibilities of profitable or unprofitable investments, or success or failure of a business enterprise, would be to lose sight of the main issue and become entangled in a maze of collateral questions. The owner who would like to show the possible profits of the condemner, as a means of increasing the estimate of the market value of the land taken, would hardly be willing to have the market value decreased by showing that the enterprise involved large risks and might not be profitable for a long time, if at all, and that the owner of the land taken should share the possible losses as well as the probable profits. *Selma, Rome & Dalton R. Co.* v. *Keith,* 53 *Ga.* 178; Tidewater Canal Co. *v.* Archer, 9 Gill.

& John. (Md.) 479; West Va. etc. R. Co. *v.* Gibson, 94 Ky. 234 (21 S. W. 1055); Gardner *v.* Inhabitants of Brookline, 127 Mass. 358. Rightly construed in connection with the facts there involved, the decision in Boom Co. *v.* Patterson, 98 U. S. 403 (25 L. ed. 206), does not conflict with what is here said, but accords therewith. Estimates of value shown to rest wholly or chiefly on such improper bases are not admissible in evidence.

Counsel for defendant in error, the owner of the land, cited San Diego Land &c. Co. *v.* Neale, 88 Cal. 50 (11 L. R. A. 604, 25 Pac. 977). But a careful reading of that decision will show that it undertakes to lay down substantially the doctrine above announced and to explain a former ruling which had been thought to express a contrary view. An excerpt from the opinion will suffice to show this: "The following authorities establish the proposition that the compensation to be awarded the owner of the land condemned can not be based upon the value of the property to the person or company in charge of the public use, nor by its necessities, and that it is not proper to take into consideration the profits which may result from the use of the land, especially where the profits depend upon the expenditure of large sums of money in carrying out the contemplated enterprise: Canal Co. *v.* Archer, 9 Gill. & J. 481; Gardner *v.* Inhabitants of Brookline, 127 Mass. 358; Burt *v.* Wigglesworth, 117 Mass. 302; Railroad Co. *v.* Balthasar [126 Pa. 1], 17 Atl. Rep. 518; Dorlan *v.* Railroad Co., 46 Pa. St. 520; Railroad Co. *v.* Galgiani, 49 Cal. 139. Appellants contend that the court did not err in refusing to strike out the testimony objected to, because the witnesses were competent to express an opinion as to value, and the reasons for such opinion can only affect the weight to be given to their testimony; but we think that where a witness bases his opinion entirely upon incompetent and inadmissible matters, or shows that such matters are the chief elements in the calculations which lead him to such conclusions, it should be rejected altogether."

If it were sought to prove such facts for the consideration of the jury, the evidence would be rejected. If a hypothetical question were framed with such facts as a basis for an opinion as to value, the question would be ruled out on objection, because such facts would be illegal and inadmissible. So when the witness shows that his opinion of value is founded on such illegal facts, the opinion is inadmissible.

It was urged that if the admission of this evidence and the re-
fusal to rule it out constituted error, it was harmless, as other
witnesses put a higher value on the property than the jury found.
The jury were not bound to accept the estimates of those other
witnesses, and it is impossible to say how far the finding may have
been influenced by this improper evidence.

6.   Certain charges to which exception was taken were not ac-
curate.   The erroneous view which caused the refusal to rule out
the evidence discussed above seems to have infected the charge.
The court charged: ."If by reason of its surroundings, or its natural
advantages, or its artificial improvements, or its intrinsic character,
it is peculiarly adapted to some particular use, and the circum-
stances which make up this adaptability have been shown, you may
take such conditions into consideration in estimating its market
value."   It is not clear to what the court referred as "its artificial
improvements," or by the phrase, "and the circumstances which
make up this adaptability have been shown," unless he referred to
the building of the condemner's dam and works, and the facts
stated by the two experts.   At least, with that evidence admitted,
the jury might have so understood.

Again, he charged that the jury might take into consideration
"the intrinsic, potential value, if any such appears, for the storage
of water for a water-plant by the plaintiff or any other person."
Again, he referred to the "potential value for the storage of water,
.  .  whether that was dependent upon the property alone, or
dependent in connection with property owned by others or depend-
ent on improvements contemplated or being made by the plaintiff
in this case."   And he further charged that if certain improvements
were being made in the locality where the property was situated,
and the fact of these improvements showed the adaptability of this
property for valuable uses, and this fact enhanced the market value
of the property, the owner would be entitled to such market value
as affected by these improvements, "though such improvements
were at the time being made by the plaintiff in this case."   This
also was apparently based on the inadmissible evidence of the ex-
perts.   Moreover, the court seems to charge that if the condemner
had started its dam, it must pay more for the property.   In 15
Cyc. 757, it is said: "Compensation must be reckoned from the
standpoint of what the landowner loses by having his property

taken, not by the benefit which the property may be to the other party to the proceedings; therefore the value of a particular piece of land to a person or corporation exercising the right of eminent domain, or the necessities of that particular person or corporation to acquire that piece of property for the particular purpose, can not be considered as an element of damage to the landowner. . . There is a recognized difference between estimating damages by the value of the property to the person or corporation exercising the right of condemnation and considering the availability or adaptability of a piece of land for the purpose for which it is condemned as an element of value which would attract any buyer for that purpose. The true rule is that any use for which the property is capable may be considered; and if the land has an adaptability for the purposes for which it is taken, the owner may have this considered in the estimate, as well as any other use of which it is capable. Thus, in proceedings to condemn land for railroad purposes, for a bridge site, or for a reservoir or water-supply, it may be shown that the land has an especial availability which would render it valuable to any one who might wish to purchase it for railroad purposes, for a bridge site, or for the purpose of a reservoir or water-supply, and the owner may insist upon this availability of his land for the particular purpose as an element in estimating its value. This special adaptability for the purpose for which the land is taken can not be made the sole basis of estimate, especially where the property possesses other capabilities; for it is the general value of the land in view of all its elements that is to be estimated." See also 2 Lewis Em. Dom. (3d ed.) §§ 706, 707.

*Judgment reversed. Beck, J., absent. The other Justices concur.*