## MEDINA VALLEY IRR. CO. v. SEEKATZ.

(Circuit Court of Appeals, Fifth Circuit. December 15, 1916. Rehearing Denied January 9, 1917.)

No. 2588.

EMINENT DOMAIN ☜☞134—CONDEMNATION—DAMAGES—EVIDENCE.

In a proceeding to condemn land to form part of a reservoir to impound water for irrigation purposes, the landowner, while entitled to damages for the value of his land for any purpose to which it could be devoted, is not, his particular tract being unavailable for a reservoir itself, entitled to recover damages on the basis of its value as reservoir property, after the exercise of the power of eminent domain by plaintiff, and so evidence of the value of the land for reservoir property was improperly received.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 356; Dec. Dig. ☜☞134.]

In Error to the District Court of the United States for the Western District of Texas; Thomas S. Maxey, Judge.

Action by the Medina Valley Irrigation Company against F. P. Seekatz. There was a judgment for defendant for damages, and plaintiff brings error. Reversed.

William Aubrey and Duval West, both of San Antonio, Tex. (De Montel & Fly, of Hondo, Tex., on the brief), for plaintiff in error.

T. T. Vander Hoeven, E. P. Lipscomb, and .C. L. Bass, all of San Antonio, Tex., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

WALKER, Circuit Judge. The plaintiff in error, the Medina Valley Irrigation Company, a corporation, claiming that it was lawfully authorized and empowered to establish, maintain, and operate an irrigation system by impounding the waters of the Medina river through the erection of dams and reservoirs, brought this suit against the defendant in error for the purpose of condemning for its use and as a part of its storage reservoir 573.44 acres of defendant's land in Medina county, Tex. The evidence adduced on the trial without contradiction showed that the land sought to be condemned in this suit consisted of several tracts, which were to be united with a large number of other tracts of land owned by various persons, all of which were required, and when united in one body were by the plaintiff to be applied to the construction and maintenance of an extensive reservoir to impound water to be used for the purposes of irrigation for the benefit of the public, and that the plaintiff was entitled to take said

---

☜☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

land of the defendant by condemnation for said purposes and needed the same to complete said reservoir.

Over objections duly made by the plaintiff, several witnesses were permitted to testify as to the value of the land in question for reservoir purposes. The witness Dillon was asked by defendant's counsel to estimate the value of the land in controversy, and to state what, in his opinion, the land of the defendant to be submerged by plaintiff's reservoir was worth for agricultural purposes and grazing purposes, and for reservoir purposes. Thereupon the plaintiff objected to the witness embodying in his opinion of said value any value that said land possessed for reservoir purposes, for the reason that said evidence in that regard would be irrelevant, immaterial, and incompetent. This objection was overruled, the plaintiff duly excepting, and the witness, in reply to the question, testified that, considering all the uses he knew of that the land could be put to, both for agricultural purposes and for reservoir and grazing purposes, the tillable land to be submerged was worth $155 per acre, and the land that was not tillable $150 per acre. Defendant's counsel asked the witness Carpenter the following question:

"Assuming that below plaintiff's lower or diversion dam there is, approximately, 100,000 acres of land that could be put under irrigation by proper canals and ditches, that plaintiff's reservoir for impounding water contains 6,790 acres, that defendant's land sought in this case to be condemned forms part of said reservoir, that the water supply of said reservoir was sufficient to annually irrigate over 100,000 acres of land, that 58 acres of defendant's land was in actual cultivation, 192 acres was susceptible of cultivation, and the remainder grazing land, what, in your opinion, is the value of the entire tract of land sought in this case to be condemned?"

The plaintiff objected to all that part of the question having reference to the value of the land for reservoir purposes, for the reason that said evidence was irrelevant, immaterial, and incompetent, and excepted to the action of the court in overruling this objection. In response to the question the witness testified that said land, in his opinion, would be worth from $100 to $200 per acre, and that he based his estimate of said value upon the amount of returns to be obtained from the land, and upon the value of other reservoir sites with which he was acquainted, and the prices at which they had been held, and how they had been considered by the people connected with them on both sides, and in this particular case, from the fact that each acre in the reservoir site will hold sufficient water for about 15 or 16 acres of land, or as many times as 6,700 is contained in 100,000. Taking that value to be the lowest, $100, any company going in would probably expect to gain 1,500 per cent. increase outside of expenses for each acre of which they might get the use in the reservoir; that said valuation included its adaptability as a part of a reservoir site.

The defendant was entitled to be paid the value of his land as it was held and owned by him, but was not entitled to a proportion of an advance in value of a much larger tract due to a union of his land with the lands of a number of other proprietors. The contest in this case was enough to show that it was not to be assumed that it was reasonably practicable, without an exercise of the power of emi-

nent domain, to bring together into one ownership the sundry parcels of land required to constitute the reservoir site, the 'value of which was deposed to. The defendant was not entitled to share in an enhancement of value attributable to an expected exercise of that power. New York v. Sage, 239 U. S. 57, 36 Sup. Ct. 25, 60 L. Ed. 143; McGovern v. New York, 229 U. S. 363, 33 Sup. Ct. 876, 57 L. Ed. 1028, 46 L. R. A. (N. S.) 391; United States v. Chandler-Dunbar Company, 229 U. S. 53, 33 Sup. Ct. 667, 57 L. Ed. 1063. The Minnesota Rate Cases, 230 U. S. 352, 455, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; Boston Chamber of Commerce v. Boston, 217 U. S. 189, 30 Sup. Ct. 459, 54 L. Ed. 725.

It is not suggested that the defendant's land, standing by itself, was eligible as a water storage reservoir site. The fact that it was so situated as to be available for a union with other lands to make up a reservoir site may have had effect in adding to the amount obtainable for it by the owner from some one desiring to buy it. It was open to the defendant to prove the market value of his land, by whatever circumstances or influences that value may have been affected. But in the circumstances of the case the questions mentioned were calculated to elicit, and did elicit, estimates of value based, not upon a knowledge of what the land as the defendant owned it was worth, but upon opinions as to what it was or would be worth as a part of a reservoir site, whether the union of all the lands required for that purpose could or could not be brought about without an exercise of the power of eminent domain. The admission in evidence of such estimates of value involved the hypothesis that the defendant was entitled to the value which was added to his land by the condemnation of it, together with other lands, in behalf of another. Such estimates were based upon a consideration of contingencies which were too remote and speculative to have any legitimate effect upon the valuation of the land as it was owned by the defendant, and the admission of evidence of them involved the unwarranted assumption that the defendant was entitled to share in an enhancement of value resulting from an exercise of the power of eminent domain.

We are of opinion that the result of the rulings mentioned was to let in inadmissible evidence as to the value of the land sought to be condemned, and that those rulings, or at any rate the one last mentioned, constituted prejudicial error.

Because of that error, the judgment under review is reversed.