W. S. Gilmore *vs.* Central Maine Power Company.

Androscoggin.     Opinion March 2, 1929.

*Frank A. Morey*, for plaintiff.
*W. B. & H. N. Skelton,*
*Nathaniel W. Wilson,* for defendant.

SITTING: WILSON, C. J., DEASY, STURGIS, BARNES, BASSETT, JJ.,
PHILBROOK, A. R. J.

DEASY, J. The defendant, by the erection of its Gulf Island
dam, flowed land of the complainant. Commissioners duly appoint-
ed under R. S., Ch. 97, Sec. 9, found the complainant's "yearly
damage" to be $75, and a "sum in gross" $1,500.

Dissatisfied, the complainant moved that the report be rejected
and recommitted. The sitting Justice overruled the motion. The
case comes to this Court on exceptions. The complainant, by his
motion, presents as reasons for rejection, "that the commissioners
in assessing damages did not adopt the rule regulating damages as
applied and given in the case of *Ford Hydro-electric Co.*, v. *Neely*,
13 Fed., 2d., 361, and the cases cited in said decision in conjunc-
tion with the rule laid down in the Massachusetts case, and that the
plaintiff is entitled to the application of the rule in the case of
*Ford Hydro-electric Co.* v. *Neely* to the facts in this case."

The only "rule" in the Ford case is quoted from *Boom Co.* v. *Patterson,* 98 U. S., 403, 25 L. Ed., 206, thus:

"In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what it is worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it, and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated."

This is undoubtedly a correct statement of the law. There is, however, nothing in it at variance with the rule adopted by the commissioners, to wit: "That in assessing such damages there should be taken into account what would have been the condition of the land there if no dam had been erected; that comparison is to be made between the present value and productiveness of the land and what it would have been if had not been injured by the dam; that all direct damage shall be allowed."

The commissioners cite as sustaining the rule adopted the following Massachusetts cases: *Palmer Co.* v. *Ferrill,* 17 Pick., 58; *Eames* v. *New England Worsted Co.,* 11 Met., 570; *Howe* v. *Ray,* 113 Mass., 88; *Fuller* v. *Man'fg Co.,* 16 Gray, 46.

In the case of *Ford Co.* v. *Neely,* cited and relied upon by the complainant in his motion, a witness named Newton, called by the land owner, "did not testify to the market value of the land at all, but testified to what he termed fair market value for the water power attributable to the lands taken."

The question passed upon by the Circuit Court of Appeals was whether this testimony was so far irrelevant as to require reversal of the District Court's judgment which was in favor of the land owner. The Court affirmed the judgment upon the ground that the evidence had "a bearing upon what might be paid for it (the land) by one desiring to purchase it, and thus bore upon its market value," and upon the further ground that the motion to strike out the testimony "was too general and indefinite."

Whether this Court would sustain exceptions to such testimony need not be determined because in the instant case no testimony of the kind was offered.

We have quoted above three forms of expressing the standard of just compensation in eminent domain cases: "worth in the market" (*Boom Company* v. *Patterson*); "market value" (*Ford Company* v. *Neely*) and "value" (Commissioners' Report). The word "value," literally construed, is broader than the other expressions. If either party is aggrieved by the use of the unqualified term "value" as a standard it is the defendant. The complainant's real objection to the Commissioners' rule is not that it is incorrect but that it is too concise. It does not, as does the Federal case, specifically and fully define the word "value." But this is not a valid ground for rejecting the report. It is elementary that anything that will affect selling price in the market enters into the term "value." We cannot assume that the Commissioners did not understand the meaning of the words which they used.

The only contention of the complainant which is out of harmony with the rule adopted in this case is stated in the report thus: "The complainant claimed that he should be allowed damages based upon the value of the property to the respondent for water power purposes, and that the Commissioners should consider the land of the complainant as part of a united whole, the whole consisting of all the parcels of land necessary to a completed water power development, which would include the lands taken."

This contention is almost a literal rendition of the theory advanced by the witness Newton who testified in *Ford Co.* v. *Neely* — a theory not adopted or approved in that case or, we believe, in any other.

This theory, if adopted, would make the owner of any land flowed in a hydro-electric development a quasi partner entitled to share in the value of the entire development without sharing in the burden of its cost or the risk of its failure. The "value for water power purposes" theory has no foundation either in reason or authority.

The owner of land taken for a railroad is not entitled to or limited by its value for railroad purposes, a value which sometimes turns out to be zero. When land is taken for streets, sewers or lighthouses, damages are not based upon the value of the land to the public for street purposes, sewer purposes or lighthouse pur-

poses. The same principle applies here. If the taking is required by public exigencies, i. e., public welfare (an issue determined beyond judicial review by the legislature), and if the purpose is public (an issue which in case of the Mill Act is no longer open to question), the rule for assessing land damages is the same, whether the land is taken for free or compensated public use.

Reason dictates that the same rule must apply in either case. The amount of land damages paid is reflected in the price that the corporation is permitted to exact for its product. In the last analysis the pending case is not between the complainant and defendant, but between the complainant and the consuming public which (except under extraordinary conditions) must pay the defendant a fair return upon the entire necessary cost of the development, including compensation paid land owners.

The "value for water power purposes" theory is inconsistent with all authorities to which our attention has been called. "Compensation should be made . . . for all property of every nature taken . . . at its full value, not to the taker but to the seller." *Kennebec Water District* v. *Waterville*, 97 Me., 221. "The real question is, what has the owner lost, not what the taker has gained." *R. R. Co.* v. *Mills*, 144 New York Sup., 646. "The compensation to which the owner is entitled is what the property in question would, immediately prior to the taking, have produced to him in the open market, not what it might be worth to the defendant taking it." *Wadsworth* v. *Water Co.*, 256 Penn St., 106; 100 Atl., 579.

"The owner would not be entitled to demand payment of the amount which the property might be deemed worth to the company; or of an enhanced value by virtue of the purpose for which it was taken; or of an increase over its fair market value by reason of any added value supposed to result from its combination with tracks acquired from others so as to make it a part of a continuous railroad right-of-way held in one ownership." *Simpson* v. *Shepard*, 230 U. S., 451, 57 L. Ed., 1563.

"The value of the land taken to the party taking it is not the test of what should be paid." 10 R. C. L., 131. "Compensation must be reckoned from the standpoint of what the land owner loses by having his property taken, not by the benefit which the property may be to the other party." 20 C. J., 776, and cases cited.

The Commissioners awarded compensation in respect to all di-

rect damages, specifying as illustrations certain items of direct damage.

As damages which are indirect and not compensable they specify "abandonment of neighboring farms, decrease of population and discontinuance of roads and schools." As to this no complaint is made in the motion for recommittal. In his brief, however, the complainant stresses these elements of damage.

When a tract of land is wholly taken or wholly submerged so that nothing is left for the owner's use the only thing to be determined is the market value of the land at the time of taking. 20 C. J., 728. If a part only is taken or damaged market value should first be determined and then there must be found the extent to which such value has been diminished by its flooding or saturation. 20 C. J., 730.

The flooding of other land by the filling of what complainant's counsel aptly likens to a "bowl," may depress or may enhance the value of any parcel of land lying in or near it; it may cause good neighbors (or perchance bad ones) to abandon their farms; it may decrease or perhaps increase population; it may cause the discontinuance of schools or possibly the abatement of nuisances. But these results are also suffered (or perhaps enjoyed) in common with people of the neighborhood whose lands are not reached by the waters of the flooded bowl and who are plainly not entitled to compensation. These results may cause damage, but if so it is indirect and not the basis of recovery. "The damages must be direct, not such as are general or common to others or to the whole community." *R. R. Co.* v. *McComb*, 60 Me., 297.

The indirect damages claimed are of the same kind suffered by a town which finds itself isolated by the construction of a new railroad, or a shopkeeper who by the building of a new avenue is left to share the unprofitable business of an unfrequented street. These are indirect and non-compensable damages which are frequently suffered in a growing country or community.

The complainant also complains that he suffers from noxious odors caused by the flowage. If so, the law of nuisances will afford relief.

*Exceptions overruled.*