NANTAHALA POWER & LIGHT COMPANY v. MRS. IDA MOSS,
and
NANTAHALA POWER & LIGHT COMPANY v. W. C. NORTON,
and
NANTAHALA POWER & LIGHT COMPANY v. MRS. ETTA DAVIS, Widow; N. D. DAVIS and Wife, EVA MAE DAVIS; J. W. DAVIS and Wife, LOUISE DAVIS; D. D. DAVIS and Wife, LOUISE DAVIS; GLENN DAVIS and Wife, MRS. GLENN DAVIS; L. H. CANNON and Wife, ELIZABETH CANNON; MYRTLE DAVIS; WOOD DAVIS; S. F. Mc-CLURE; DR. EDGAR ANGEL; Trustee; T. C. LEDBETTER; H. E. BUCHANAN, Guardian M. BUCHANAN, JR., Incompetent; MRS. EDDIE W. WILSON, Guardian J. N. WILSON, Incompetent; MRS. ALVIN STEWART, Administratrix, ALVIN STEWART; W. C. NORTON; and JOHN D. DAVIS,
and
NANTAHALA POWER & LIGHT COMPANY v. MRS. ETTA DAVIS, Widow; N. D. DAVIS and Wife, EVA MAE DAVIS; J. W. DAVIS and Wife, LOUISE DAVIS; D. D. DAVIS and Wife, LOUISE DAVIS; GLENN DAVIS and Wife, MRS. GLENN DAVIS; L. H. CANNON and Wife, ELIZABETH CANNON; MYRTLE DAVIS; WOOD DAVIS; S. F. Mc-CLURE; DR. EDGAR ANGEL, Trustee; T. C. LEDBETTER; H. E.

BUCHANAN, GUARDIAN M. BUCHANAN, JR., INCOMPETENT; MRS.
EDDIE W. WILSON, GUARDIAN J. N. WILSON, INCOMPETENT; MRS.
ALVIN STEWART, ADMINISTRATRIX ALVIN STEWART, DECEASED; MRS.
MARY ANN STEWART; AND JOHN D. DAVIS.

(Filed 29 October, 1941.)

**1. Eminent Domain § 3—**

A power company may maintain proceedings against riparian owners to
condemn the right to divert the waters of a stream when such diversion
is an integral part of its hydroelectric project.

**2. Eminent Domain § 9—**

The measure of compensation to be paid for the taking of land or any
interest therein is the market value of the property, which is the price it
will bring when offered for sale by one who desires, but is not obligated
to sell, and is bought by one desiring to buy, but not under the necessity
of purchasing.

**3. Same—**

In determining the market value of property, consideration need not be
confined to its condition and use at the time of the taking, but the uses to
which the property may be applied or for which it is reasonably adapta-
ble, to the extent that such potential uses affect its value at the time of
the taking, may be considered.

**4. Same—**

In assessing compensation for land taken, neither the value of the land
as an integral part of the taker's project, nor the taker's necessity of
having the land as a part of its project should be considered.

**5. Same—Held: Court erred in admitting evidence relating to benefits ac-
cruing to petitioner from the taking and in charging the jury thereon.**

Petitioner owns a dam above respondents' land and a power house on
the stream below respondents' land, and diverts the water from the dam
to the power house through a tunnel. This proceeding was instituted to
assess compensation for the diversion of the water. The court admitted
evidence as to the location of the dam and power plant, the length of the
tunnel, the proportionate part of the fall owned by each of respondents,
the value of respondents' land when considered as an essential part of the
whole development, and reviewed this evidence in its charge to the jury.
*Held:* The admission of the evidence and the charge of the court is error,
since the jury was permitted to consider, as elements of compensation, the
benefits accruing to the petitioner from the taking, the value of respond-
ents' land when considered as an integral part of the development, and
petitioner's necessity of acquiring the right of diversion as a part of its
project.

**6. Appeal and Error § 39—Error in admission of evidence held not cured
in charge.**

In this condemnation proceeding the trial court erroneously admitted
upon the issue of damages evidence relating to the benefits accruing to
petitioner from the taking and the value of respondents' lands when con-
sidered as units of petitioner's power project. *Held:* The error in the
admission of the evidence was not cured by a correct statement in the

charge of the rule for the admeasurement of compensation, when the court in other portions of the charge emphasized the error by modifying petitioner's prayers for instructions to read that benefits accruing to petitioner *by reason of its expenditures* should not be considered.

**7. Eminent Domain § 9—In order for evidence of potential uses of land to be competent, such uses must be so immediately probable as to affect the present market value of the land.**

This proceeding was instituted by petitioner to condemn the right to divert waters of a stream for a power project. Respondents were permitted to introduce evidence that their lands, together with adjacent lands other than lands belonging to petitioner, might be united in an independent water power project, but respondents' evidence was to the effect that there was no present demand for such additional project and that there was merely a potential possibility of a market for such project. *Held:* While the highest and most profitable uses for which the property is adaptable and needed, or likely to be needed, in the reasonably near future may be properly considered to the extent that such potential uses affect the present market value of the land, in the present case respondents did not show that the conversion of their land into another power project was so reasonably probable or that demand for such potential use was so reasonably immediate as to affect the present market value of respondents' land, and evidence of such potential use under the facts and circumstances of this case was speculative and should have been excluded or the jury cautioned not to consider it.

**8. Trial § 29b—**

An opinion must be read in connection with the facts of the particular case it decides, and therefore in reading a decision to the jury the trial court must exercise great caution to ascertain that the language used in the decision is a statement of the general law applicable to the facts in the case at issue, and should call the jury's attention to any dissimilarity in the facts in order to apply the general statement of the law to the evidence in the case at issue.

CLARKSON, J., concurring in result.

APPEAL by petitioner from *Alley, J.,* at May Term, 1941, of JACKSON. New trial.

There are four separate condemnation proceedings instituted before the clerk of the Superior Court of Jackson County for the purpose of condemning the right to divert the waters of the west fork of Tuckaseegee River from the lands of the various respondents and for a right of way 240 feet long for a tunnel over the lands of the respondent Ida Moss. The causes were consolidated for the purpose of trial.

The petitioner owns a dam site on the west fork of the Tuckaseegee River upstream from the lands of the several respondents. It also owns a large body of land above the dam site for reservoir purposes. The petitioner also owns all the land on both sides of the river below the dam to the property of the respondents—a distance of about one-half mile— including what is known as High Falls. Below the lands of the peti-

LIGHT Co. *v.* MOSS.

tioner each respondent owns a tract of land running to the thread of the stream, including riparian rights in the waters of the river as follows: (1) On the right-hand side going down the J. W. Davis heirs own 11 acres known as the Davis "little" tract, having a frontage of 450 feet on the stream; (2) the respondent Ida Moss owns 372 acres with 11,731 feet frontage on the stream on the right-hand side; (3) across the river on the left-hand side the respondent W. C. Norton owns a tract containing 525 acres fronting approximately 4,726 feet; (4) next on the left-hand side is situate the J. W. Davis heirs "big" tract. Within the Davis "big" tract and fronting on the river is the Reed & Warren tract with a frontage of 2,417 feet, belonging to the petitioner. The Davis "big" tract has water frontage of 5,038 feet above the Reed & Warren tract, a frontage of 2,155 feet within the boundary of the Reed & Warren tract, and approximately 3,201 feet below the Reed & Warren tract—its frontage, due to the location of Reed & Warren tract, being broken into three sections.

The petitioner established its power house down-stream a considerable distance below the property of respondents and constructed a tunnel or tube from the dam to the power house to convey the water. This diverts all of the water entering the river above the petitioner's dam, but other waters entering the stream furnish water to the lands of the respondents for all ordinary domestic and stock-raising purposes.

These several proceedings were instituted for the purpose of fixing the compensation to be paid to the several respondents for the diversion of such waters through the instrumentality of the tunnel or tube extending from the dam site above the property of respondents to the power plant considerably below such property.

The jury answered the several issues submitted, fixing the amount of compensation to be paid to the individual respondents. From judgments thereon the petitioner appealed.

*Dan K. Moore, Stillwell & Stillwell, and Harkins, Van Winkle & Walton for petitioner, appellant.*
*Hayes Alley and Jones, Ward & Jones for respondents, appellees.*

BARNHILL, J. The petitioner has not taken and does not seek to take any part of the property of any one of the respondents except a right of way or easement. for the tunnel which passes across the land of the respondent Ida Moss. It only seeks the right to divert the waters of Tuckaseegee River which passes along the boundary line of the respective respondents and to have the compensation to be paid therefor fixed and determined. And it is conceded that as the property line of each respondent extends to the thread of the stream each is a riparian owner .

affected by the diversion of the waters of such stream. The right to so divert is a proper basis for condemnation proceedings.

The petitioner complains that the court below permitted the cause to be tried upon the theory, in part, that the respondents are entitled to compensation for the diversion of the waters of Tuckaseegee River on the basis of advantages thereby accruing to the petitioner. That is, on the basis of the enhanced value of its development resulting from the use of the water as diverted. It contends that under the evidence offered and the charge of the court the jury was permitted to award respondents a ratable share of the value to the petitioner based on fall per foot in the whole development. Its contentions in this respect are properly presented by a series of exceptions duly preserved. While the exceptions in this respect are numerous we may consider the one question thereby presented without discussing any one of the exceptions in detail.

Witnesses were permitted to give testimony as to the location and nature of petitioner's reservoir and power plant, the location of its dam, the length of its tunnel and the total fall thereby created, the relative location of the lands of respondents, the proportionate part of the fall owned by them and other facts relating to the benefits accruing to the petitioner from the taking. They were then permitted to estimate the value of respondents' land when considered as an essential part and parcel of the whole development.

In its charge the court reviewed this evidence in detail, calling the attention of the jury to the fact that the witnesses had said: "That the diversion of the river and making the tunnel has enhanced the value of petitioner's proposition, and that he took this in consideration in placing his estimate of value upon respondents' property"; "in considering the hydroelectric proposition he said he figured each one of these tracts as a unit of considerable potential value, assuming that a plant would be developed, that the whole would be developed into what he would consider a great water power"; "he considered the respondents' property as a part of the petitioner's property, as one of its units"; "he has made his estimate on the basis of a unit by the owners, and also in connection with the petitioner"; "that the petitioner could not profitably or practicably proceed or have any such power proposition as it now has without this diversion of the river and that he took this into consideration in placing his value on the respondents' property"; "he arrived at the estimate of its value by considering all the property, including the respondents' property and the petitioner's property as a unit"; "that this property is an essential part of that unit, and that the petitioner is now using all of it as one unit"; and "the petitioner has developed part of the unit and is now trying to get the rest of the unit."

LIGHT CO. *v.* MOSS.

The court then called the attention of the jury to the contentions made by respondents based upon this evidence to the effect in part that the petitioner cannot operate without the right to divert the water from the lands of the respondents and that the acquisition of such right "is indispensable to the petitioner."

The market value of property is the yardstick by which compensation for the taking of land or any interest therein is to be measured and market value of property is the price which it will bring when it is offered for sale by one who desires, but is not obliged to sell it, and is bought by one who is under no necessity of having it. In estimating its value all of the capabilities of the property, and all of the uses to which it may be applied, or for which it is adapted, which affect its value in the market are to be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner. 2 Lewis, Eminent Domain (3d), 1228, and numerous cases cited; *Brown v. Power Co.,* 140 N. C., 333; *Pemberton v. Greensboro,* 208 N. C., 466, 181 S. E., 258; *Highway Com. v. Hartley,* 218 N. C., 438, 11 S. E. (2d), 314, and cases cited; Bonbright, Valuation of Property, Vol. 1, p. 411, *et seq.; Light Co. v. Carringer, ante,* 57, and cases cited. *Ford Hydro-Electric Co. v. Neely,* 13 Fed. (2d), 361; Anno. 75 A. L. R., 857; 10 R. C. L., 128.

That this is the true rule to be followed in ascertaining the compensation due the respondents seems to be conceded. The application of the rule and what is to be excluded from consideration in ascertaining the reasonable market value is the hub of the controversy.

The just compensation rule merely requires that the owner of the property taken shall be paid for what is taken from him. "It deals with persons, not with tracts of land, and the question is, what has the owner lost? not, what has the taker gained?" *Boston Chamber of Commerce v. Boston,* 217 U. S., 189, 54 L. Ed., 725. The value of the property to the condemnor for his particular use is not to be considered. *Power Co. v. Hayes,* 193 N. C., 104, 136 S. E., 353; *United States v. Chandler-Dunbar W. P. Co.,* 229 U. S., 53, 57 L. Ed., 1063, and cases cited; *U. S. v. Hayman,* 115 Fed. (2d), 599.

Value to the taker of a piece of land combined with other parcels for public use is not the measure of or guide to the compensation to which the owner is entitled. *Olson v. U. S.,* 292 U. S., 246, 78 L. Ed., 1236, and cases cited. *Highway Com. v. Hartley, supra.* "The value of the land taken to the party taking it is not the test of what should be paid, nor should the fact that the land is desired or needed for a particular public use be considered when it is taken for that use." 18 Am. Jur., 881. Neither the value to the condemnor nor his necessity can be taken into consideration when fixing the value. 18 Am. Jur., 882; *McGovern*

*v. New York,* 229 U. S., 363, 57 L. Ed., 1228; *Wadsworth v. Water Co.,* 256 Pa., 106; *San Diego Land Co. v. Neale* (Cal.), 25 Pac., 977; *Thompson v. State,* 189 N. Y., 590; *Kirk v. Buckles,* 134 Okla., 206, 273 Pac., 346.

The very purpose underlying the authority to take by eminent domain is to prevent the owner who is aware of the necessity of the taker from making the most of such necessity and from demanding the highest price such necessity impels. Hence "holdup" or "strategic" values created by the necessity of the taker is not the true criterion. *U. S. v. Chandler-Dunbar W. P. Co., supra; McGovern v. N. Y., supra; Boston Chamber of Commerce v. Boston, supra; Olson v. U. S., supra; Highway Com. v. Hartley, supra.*

It follows that it was error for the court to admit the indicated evidence and to submit the same to the jury for its consideration in the charge.

But the respondents take the position that the admission of this evidence, if error, was rendered harmless by the charge of the court. In this connection it may be conceded that the court in a part of its charge correctly stated the rule to be followed by the jury in the ascertainment of the amounts to be awarded the several respondents.

Whether in any event this would be sufficient to erase from the minds of the jury the impression which must have been made by the admission of the evidence, the recapitulation thereof by the judge, and the statement of the contentions based thereon is subject to serious debate. This we need not now decide for the reason that the court went further and, in our opinion, emphasized the error to such an extent as to make it appear that the jury must have given weight and consideration to the evidence and to the charge in respect thereto in arriving at its verdict, so as to make it manifest that the respondents have been awarded compensation for the benefits accruing to the petitioner from the diversion of the waters in question. *Pemberton v. Greensboro, supra.*

To meet the situation arising from the admission of this testimony and to preserve its exceptions thereto the petitioner tendered a number of prayers for instruction, requesting the court to charge the jury, in substance, that any enhanced value in the property of petitioner resulting from the diversion, the value of the property to the company condemning it, the enhancement of the value of its project, the benefits accruing to the petitioner and the value of the diverted water, when used in connection with the dam, reservoir and power project of the petitioner, were not to be considered. The court modified each of these instructions by adding such terms as "accruing by reason of its expenditures"; "by reason of its expenditures" and "caused by its expenditures," or "arising from its expenditures."

The modifications were unwarranted. The instructions, as given, when viewed in connection with the evidence submitted and the contentions stated, clearly left it open for the jury to consider such elements—except as increased in value by the expenditures of the petitioner—in ascertaining the compensation to be paid.

Other exceptions are directed to the admission of evidence offered for the purpose of showing that by uniting the lands of respondents with adjacent lands, other than that belonging to the petitioner, an independent water power project was available. Related exceptions are to the charge of the court in respect thereto.

It is unnecessary to discuss these exceptions at length. If as one witness testified, "it is speculation, like anything else—I proceeded on the assumption that by some method the property owners on both sides of the street might be combined in some way so that a dam could be built in a similar manner  . . .  there isn't a market available at the minute, there is a potential possibility of a market," the evidence was speculative in nature and it should have been excluded, or the jury should have been cautioned not to consider it.

Elements affecting value that are dependent upon evidence of combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration, for that would be to allow more speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth. *Olson v. United States, supra; Ayden v. Lancaster,* 197 N. C., 556, 150 S. E., 40.

Before valuations can be considered as a basis for awarding damages under the theory that the numerous types of land may be brought together and used as one tract in a development, it must be shown that there is a reasonable probability of the unification of the tracts of land involved and that it is feasible and practicable to combine them in the one ownership either by condemnation proceedings or by agreement, and such evidence should not be submitted to the jury under any circumstances when it appears that such unity is impractical or impossible. *R. R. v. Gahagan,* 161 N. C., 190, 76 S. E., 696.   See also *Central Power Co. v. Stone,* 139 Ga., 416, 77 S. E., 565; *Chicago, Burlington & Q. R. R. Co. v. City of Chicago,* 166 U. S., 226, 41 L. Ed., 979; *Stockton v. Ellingwood* (Cal.), 275 Pac., 228; *Eichman v. Oklahoma City* (Okla.), 202 Pac., 184; *N. Y. City v. Sage,* 239 U. S., 57, 60 L. Ed., 143; *Medina Valley Irrig. Co. v. Seekatz,* 237 Fed., 805; *Idaho Farm Devel. Co. v. Brackett* (Idaho), 213 Pac., 696; *Emmons v. Utilities Power Co.* (N. H.), 141 Atl., 65, 58 A. L. R., 788; *Gilmore v. Central Maine Power Co.* (Me.), 145 Atl., 137.

Conversely, the highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not as a measure of value but to the full extent that such prospect or demand for such use affected the market value at the time respondents were deprived of their riparian rights. *Olson v. U. S., supra; Miss. & R. River Boom Co. v. Patterson,* 98 U. S., 403, 25 L. Ed., 206; *Clark's Ferry Bridge Co. v. Public Service Com.,* 291 U. S., 227, 78 L. Ed., 767; 2 Lewis, Eminent Domain (3d), sec. 707, p. 1233; 1 Nichols, Eminent Domain (2d), sec. 220, p. 671; *U. S. v. Powelson,* 118 Fed. (2d), 79. The fact that the most profitable use of a parcel of land can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is so reasonably sufficient and the "other uses" are so reasonably probable as to affect market value. *N. Y. City v. Sage, supra; Olson v. U. S., supra; United States v. Powelson, supra.* In making the estimate of market value there should be taken into account all considerations that fairly might be brought forward and reasonably given substantial weight by the seller and buyer at private sale. *Olson v. U. S., supra; Brooks-Scanlon Corp. v. United States,* 265 U. S., 106 68 L. Ed., 934; 18 Am. Jur., 880; *Emmons v. Power Co., supra.*

At the next trial, in ruling upon the admissibility of evidence offered for the purpose of showing the availability and adaptability of the land of respondents for uses other than those to which it is now being subjected the trial judge should be guided by these generally recognized principles.

The petitioner likewise complains that the court below in its charge read extensively from the opinions in *Brown v. Power Co., supra,* and *United States v. Powelson, supra,* in which the facts were essentially different, and from the *Olson case, supra,* and other cases, omitting from such reading statements that qualified and limited the general principles enunciated in those cases.

While the right of a judge to adopt the language used by an appellate court in its opinions, when properly applicable to the facts in the case on trial, cannot be gainsaid, extreme caution should be exercised in so doing.

The law discussed in any opinion is set within the framework of the facts of that particular case and it is often, if not generally, extremely difficult to transplant the law so that it will grow healthily upon another set of facts merely by reading from an opinion without calling attention to the dissimilarity in the facts and applying the law to the evidence in the cause at issue.

"Especially is it difficult to ascertain to what extent the facts in the case are binding upon the language employed. Not infrequently the

statements are not commensurate with their own applicability. They read like statements universalizing some principle when in truth they are intended to express something peculiar to the case. Considerable difficulty is always experienced in so expressing an idea that the language implies no more and no less than just what is intended." Brumbaugh, Legal Reasoning and Briefing, p. 195. The judge should be ever mindful that "a decision . . . draws its peculiar quality of justice, soundness and profoundness from the particular facts and conditions of the case which it has assumed to adjudicate." *Ibid.*, p. 172. "It is platitude to say that language wrenched from its context is apt to be misconstrued. Courts repeatedly have held that the language of their opinions must be read in connection with the facts of the case in which the language was used. This is, or ought to be, known to all. The surprising thing is to find how utterly meaningless, how completely unununderstandable, the language of an opinion of a court can be when taken out of its setting." Walter, Brief-Writing and Advocacy, pp. 78-9.

This difficulty in transplanting law is due, in part at least, to the dual nature of the judicial opinion. Its primary function is to furnish the rationale of the decision and disposition of the instant case; its secondary—and incidental—function is the exposition of general legal principles. In each case the particular becomes so blended with the general, the specific so definitely a part of the universal, that he must indeed be a deft and expert craftsman who undertakes to excise that which is general law. It is this danger of coloring the general with the particular which makes so dangerous the reading to the jury of extensive portions of opinions in previously decided cases. When we realize that able lawyers are sometimes perplexed as to the extent of the universality of principles apparently enunciated in cases, how much more apparent it must be that laymen, untrained in the law, are likely to transfer indiscriminately the principles of factually different cases to the case at bar when those principles have been called to their attention by the impartial judge who is trying the case. *Peay v. Durham Life Ins. Co.,* 185 S. C., 78, 193 S. E., 199; *Milhous v. State Highway Dept.,* 194 S. C., 33, 83 S. E. (2d), 852.

The facts in the *Brown* and in the *Powelson cases, supra,* are substantially different from those presented on this record. In the *Olson case, supra,* the Court used expressions which materially qualified the general principles discussed. Care and caution should be exercised in applying the law as stated in those cases to the facts in this cause.

There are other exceptions in the record which are stressed with some force and reason. The questions thus presented may not again arise. Hence, we refrain from discussion thereof.

For the reasons stated the petitioner is entitled to a

New trial.

CLARKSON, J., concurring in result: The principle of law governing this case is stated as follows in *McCandless v. United States, 298 U. S.,* 343: "The rule is well settled that, in condemnation cases, the *most profitable use* to which the land can probably be put *in the reasonably near future* may be shown and considered as bearing upon the market value; and the fact that such use can be made *only in connection with other lands does not necessarily exclude it from consideration if the possibility of such connection is reasonably sufficient to affect market value. Olson v. United States, 292 U. S., 246 (255-6), 78 L. Ed., 1244.*" (Italics mine).

In the case of *Olson v. United States, supra, Mr. Justice Butler,* speaking for the Court, said, at page 248: "The only substantial question is whether, on the facts disclosed by the record and others of which judicial notice may be taken, the actual use and special adaptability of petitioners' shorelands for the flowage and storage of water, that *inter alia* will be available for the generation of power, may be taken into consideration in ascertaining the just compensation to which petitioners are entitled . . . (p. 255). Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined. The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held. . . . (citing authorities). The fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect the market value. Nor does the fact that it may be or is being acquired by eminent domain negative consideration of availability for use in the public service. *New York v. Sage, 239 U. S., 57 (61), (60 L. Ed., 143, 146, 36 S. Ct., 25).* It is common knowledge that public service corporations and others having that power frequently are actual or potential competitors not only for tracts held in single ownership but also for rights of way, locations, sites and other areas requiring the union of numerous parcels held by different owners. And, to the extent that probable demand by prospective purchasers or condemnors affects market value, it is to be taken into account. *Mississippi & R. River Boom Co. v. Patterson, 98 U. S., 403 (25 L. Ed., 206), ubi supra.* But the value to be ascertained does not include, and the owner is not entitled to compensation for, any element resulting subsequently to or because of the taking.

Considerations that may not reasonably be held to affect market value are excluded. Value to the taker of a piece of land combined with other parcels for public use is not the measure of or a guide to the compensation to which the owner is entitled. . . . (p. 257). In respect of each item of property that value may be deemed to be the sum which, considering all the circumstances, could have been obtained for it; that is, the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy. In making that estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining. *Brooks-Scanlon Corp. v. United States,* 265 U. S., 106 (124), (68 L. Ed., 934, 941, 44 S. Ct., 471). The determination is to be made in the light of all facts affecting the market value that are shown by the evidence taken in connection with those of such general notoriety as not to require proof."

The most recent decision, which I think is directly in point, is the case of *United States v. Powelson,* 118 Fed. (2d), 79. This was an opinion from this circuit, written by *Judge Parker.* Quoting from the *Powelson* opinion, *Judge Parker* says, at p. 84: "The fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value. Nor does the fact that it may be or is being acquired by eminent domain negative consideration of availability for use in the public service. *New York v. Sage,* 239 U. S., 57 (61). It is common knowledge that public service corporations and others having that power frequently are actual or potential competitors, not only for tracts held in single ownership but also for rights of way, locations, sites and other areas requiring the union of numerous parcels held by different owners. And, to the extent that probable demand by prospective purchasers or condemnors affects market value, it is to be taken into account. *Boom Co. v. Patterson, ubi supra,"* citing and quoting from *Olson v. U. S., supra.*

In North Carolina the principle above enumerated is stated in *Brown v. Power Co.,* 140 N. C., 336, and *R. R. v. Gahagan,* 161 N. C., 190.

In the *Brown case, supra,* pp. 341-345, it is written: "It is well settled that when, for the purpose of meeting and providing for a public necessity, the citizen is compelled to sell his property or permit it to be subjected to a temporary or permanent burden, he is entitled by way of compensation, to its actual market value. Lewis on Em. Domain, sec. 478. The difficulty arises not so much in fixing the standard of the right, as in ascertaining what elements or factors may be shown in applying the standard. Certainly where by compulsory process and for the public good the State invades and takes the property of its citizens,

in the exercise of its highest prerogative in respect to property, it should pay to him *full compensation.* The highest authorities are to that effect. 'The market value of property is the price which it will bring when it is offered for sale by one who desires but is not obliged to sell it, and is bought by one who is under no necessity of having it. In estimating its value all the capabilities of the property and all the uses to which it may be applied or for which it is adapted may be considered and not merely the condition it is in at the time and the use to which it is then applied by the owner.' Lewis Em. Dom., *supra.* *Mr. Justice Field,* in *Boom Co. v. Patterson,* 98 U. S., 403, says: 'In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or be regarded as valueless because he is unable to put it to any use. Others may be able to use it. Its capability of being made thus available gives it a market value which can be readily estimated.' In *L. R. Junction Ry. v. Woodruff,* 49 Ark., 381 (4 Am. St. Rep., 51), it is said: 'Since, then, the market value is the true criterion of damages, we are led to inquire—what is the market value? The word market conveys the idea of selling and the market value, it would seem to follow, is the selling value. It is the price which an article will bring when offered for sale in the market. It is the highest price which those having the ability and the occasion to buy are willing to pay.' Referring to the range which the testimony may take in ascertaining the market value, the Court says: 'As a general guide to the range which the testimony should be allowed to assume, we think it safe to say that the landowner should be allowed to state, and have his witnesses state, every fact concerning the property which he would naturally be disposed to adduce in order to place it in an advantageous light if he were attempting to negotiate a sale of it to a private individual. On the other hand, the jury and the opposing counsel, for the information of the jury, should be allowed to make every inquiry touching the property which one about to buy would feel it to his interest to make.' 'If a tract of which the whole or a part is taken for public use, possesses a special value to the owner, which can be measured by money, he is entitled to have that value considered in the estimate of compensation and damages.' 15 Cyc., 724; Cooley Const. Lim., secs. 567-8. . . . (p. 345). The rule is thus stated by Mr. Lewis (Lewis Em. Dom., *supra*): 'The market value of property includes its value for any use to which it may be put. If, by

reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown and the fact of such adaption may be taken into consideration in estimating the compensation. Some of the authorities hold that its value for a particular use may be proved, but the proper inquiry is, what is its market value in view of any use to which it may be applied and of all the uses to which it is adapted.' "

Arnold H. Vanderhoof, a civil engineer for 30 years, who had wide experience in hydroelectric developments, testified for respondents in regard to the use connected with other lands sufficient to be submitted to the jury: "It is my opinion it would be feasible to do it, practical. The power facilities are not great enough in the country for the demand."

The material vice, I think, in the case is the admission of the following questions and answers, elicited on the part of respondents from their witness Vanderhoof: "Q. Now, I will ask you this question: Mr. Vanderhoof, it is alleged in the petition of the Nantahala Power & Light Company, and also these landowners admit it in their answer, that the diversion of this river through their property, and the building of the tunnel are essential and necessary in order for the Nantahala Power & Light Company to develop its proposition, that is alleged and admitted. I wish you would state whether or not, in your opinion, the Nantahala Power & Light Company could probably or profitably develop and operate its project without the diversion of the Tuckaseegee River under the mountain and away from these landowners' property? (Petitioner objects—overruled—exception.) Ans.: I am of the opinion, without making a careful study of it, that the Nantahala Power & Light Company could develop power at the base of their dam, but without diverting the water from this stream. The available head would be greatly reduced and, therefore, the power which could be developed would be greatly reduced. Q. Then in forming your opinion as to the *market value of these landowners' property you took into consideration in giving the larger figure that it was a part and parcel of this hydroelectric development?* (Petitioner objects—overruled—exception.) Ans.: I did. Q. And in making your calculations and figures when you considered it and treated it as you say it should be, as a part and parcel of the *larger development, you placed the higher value of the two on it?* (Petitioner objects—overruled—exception.) Ans.: Yes, sir." There was other evidence of similar import objected to.

In the charge of the court below based on this incompetent evidence, it is said: "On the re-direct examination he said in substance it would be an advisable proposition to build a dam on the respondents' property

before the water was diverted, that the demand for electric power is much greater at this time than the supply. He says he has not made his figures for a plant under the dam; that the most practicable place would be below the dam and at the southern end of the property which would give something over 400 foot fall; that he has made his estimate on the basis of a unit by the owners, *and also in connection with the petitioner;* that the petitioner could not profitably or practically proceed or have any such power proposition as it now has without this diversion of the river and that he took this into consideration in placing his value on the respondents' property."

In *Ayden v. Lancaster,* 197 N. C., 556 (559), this Court quotes with approval the following language from the case of *U. S. v. Chandler-Dunbar Co.,* 229 U. S., 53, 57 Law. Ed., 1063: "The value should be fixed as of the date of the proceedings with reference to the loss the owner sustains, considering the property in its condition and situation at the time it is taken and not as enhanced by the purpose for which it is taken."

I think in the charge this incompetent evidence was not so erased from the minds of the jury that they could render an impartial and unprejudicial verdict. After the jury had deliberated until the following morning they requested further instructions. I think these instructions did not eliminate the baneful effect of this incompetent evidence.

There is nothing in the evidence to indicate that these property owners, whose land was taken by the petitioner, wanted anything more than just compensation. There is no evidence that they were seeking to "hold up" or force "strategic" values. Some of the other phases dealt with in the main opinion I think were not so prejudicial as to merit the serious consideration given them. The judge trying the case was learned in the law and in the trial of this cause seemed to be familiar with the authorities and the subject and gave study to the case. The case was well tried, but in so long and varied attitudes (the record contains 420 pages) casualties will sometimes happen to the best of trial judges.